JOHN A. FEENEY & another[1] *vs.* DELL INC.[2] & others.[3]

Middlesex. December 4, 2012. - June 12, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Consumer Protection Act,* Class action, Arbitration. *Public Policy. Contract,* Arbitration. *Arbitration,* Waiver. *Federal Preemption. Practice, Civil,* Class action.

Discussion of *Feeney* v. *Dell Inc.,* 454 Mass. 192 (2009), in which this court concluded that an arbitration clause in a consumer contract that prohibited class actions in any forum was in contravention of Massachusetts public policy and therefore unenforceable. [476-477]

Discussion of six decades of United States Supreme Court jurisprudence expanding the scope and preemptive effect of the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. [478-485]; and discussion of the United States Supreme Court's holding in *AT&T Mobility LLC* v. *Concepcion,* 131 S. Ct. 1740 (2011), and the conditions under which a State court may still invalidate an arbitration agreement containing a class action waiver [485-500].

This court concluded that a Superior Court judge properly invalidated an arbitration provision in a consumer contract that included a clause effectively prohibiting class actions in any forum, where the plaintiffs demonstrated, in light of the complex nature of their claims and the modest amount of their individual damages, that the class action waiver effectively denied them a remedy and thus insulated the defendant from private civil liability for violations of G. L. c. 93A. [500-507]

CIVIL ACTION commenced in the Superior Court Department on March 10, 2003.

A motion to confirm an arbitration award, filed on July 18, 2011, was heard by *Douglas H. Wilkins,* J.

The Supreme Judicial Court granted an application for direct appellate review.

---

[1]Dedham Health and Athletic Complex, individually and on behalf of persons similarly situated.

[2]Formerly known as Dell Computer Corporation.

[3]Dell Catalog Sales Limited Partnership; Dell Marketing Limited Partnership; Qualxserv, LLC; and BancTec, Inc. Except where necessary to differentiate among them, we refer to the defendants collectively as "Dell."

*John A. Shope* (*Eric A. Haskell* with him) for the defendants.

*Edward D. Rapacki* for the plaintiffs.

The following submitted briefs for amici curiae:

*Scott L. Nelson,* of the District of Columbia, & *Matthew W.H. Wessler* for Public Justice, P.C., & another.

*Robin S. Conrad, Kate Comerford Todd,* & *Shane B. Kawka,* of the District of Columbia, *Alan E. Schoenfeld,* of New York, & *Mark C. Fleming* for Chamber of Commerce of the United States of America.

*Deborah J. La Fetra,* of California, & *Donald R. Pinto, Jr.,* for Pacific Legal Foundation.

*Ben Robbins* & *Martin J. Newhouse* for New England Legal Foundation.

CORDY, J. We decide in this case whether a class action waiver provision in an arbitration clause in a consumer contract is enforceable where the plaintiff can demonstrate, as a factual matter, that the class action waiver effectively denies him or her a remedy and insulates the defendant from private civil liability for violations of State law. In doing so, we must consider the extent to which the United States Supreme Court's decision in *AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740 (2011) (*Concepcion*), abrogates our earlier decision in this case, *Feeney v. Dell Inc.,* 454 Mass. 192 (2009) (*Feeney I*), which invalidated the same class action waiver after concluding that the requirement of individual arbitration was "contrary to the fundamental public policy of the Commonwealth favoring consumer class actions under [the Massachusetts consumer protection statute,] G. L. c. 93A." *Id.* at 193.

In *Concepcion,* the Supreme Court granted certiorari to decide whether the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et seq. (2006), "prohibits States from conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures." *Concepcion, supra* at 1744. In answering that question, the Supreme Court identified two situations in which the FAA will preempt a State law rule: (1) where a State law "prohibits outright the arbitration of a particular type of claim," and (2) where a State law "doctrine normally thought to be generally applicable . . . is alleged to have been applied in

a fashion that disfavors arbitration," and such an application "stand[s] as an obstacle to the accomplishment of the FAA's objectives." *Id.* at 1747, 1748. Because the State rule being challenged in *Concepcion* "classif[ied] most collective-arbitration waivers in consumer contracts as unconscionable," it stood "as an obstacle to the accomplishment and execution of the full purposes and objectives of [the FAA]" and was therefore preempted. *Id.* at 1746, 1753, quoting *Hines* v. *Davidowitz,* 312 U.S. 52, 67 (1941).

For the reasons discussed below, we conclude that *Concepcion* precludes the invalidation of class waiver provisions in arbitration clauses in consumer contracts, such as the one at issue here, where the reason for invalidation is that such waivers are contrary to the fundamental public policy of the Commonwealth. Because that was our primary reason in *Feeney I* for invalidating the class waiver provision in the arbitration agreement, *Concepcion* undoes the principal rationale for our decision in *Feeney I.* However, we also conclude that the intent of Congress in enacting the FAA was to preserve the availability of an arbitral forum and remedy for the resolution of disputes between parties to a commercial contract, and that it would be contrary to Congressional intent to interpret the FAA to permit arbitration clauses that effectively deny consumers any remedy for wrongs committed in violation of other Federal and State laws intended to protect them. We do not interpret the Supreme Court's decision in *Concepcion* as indorsing such a result. Accordingly, we conclude that a court is not foreclosed from invalidating an arbitration agreement that includes a class action waiver where a plaintiff can demonstrate that he or she effectively cannot pursue a claim against the defendant in individual arbitration according to the terms of the agreement, thus rendering his or her claim nonremediable. Finally, we conclude that the plaintiffs have met their burden of demonstrating that, in light of the complex nature of their claims and the modest amount of their individual damages, they cannot pursue their statutory claim under the individual claim arbitration process required by the arbitration agreement. Consequently, the arbitration agreement was properly invalidated.[4]

---

[4]We acknowledge the amicus briefs of the Chamber of Commerce of the

1. *Factual and procedural background.* A thorough recitation of the facts and procedural history can be found in our earlier opinion in this case.[5] See *Feeney I, supra* at 193-198.

The plaintiffs, John A. Feeney and Dedham Health and Athletic Complex (Dedham Health), commenced a putative class action against Dell in 2003 alleging that its "deliberate and systematic practice" of charging and collecting from the plaintiffs and other Massachusetts residents monies falsely characterized as a lawful sales tax on the purchase of optional service contracts for computers constituted "unfair or deceptive acts or practices" in violation of G. L. c. 93A and regulations issued by the Attorney General of Massachusetts. Dell collected sales tax on the plaintiffs' respective optional service contracts, totaling $13.65 from Feeney and $215.55 from Dedham Health. Asserting that they and other Massachusetts customers had suffered damages because Dell caused them to pay monies for a "tax" that had not been imposed by any Massachusetts taxing authority, the plaintiffs sought relief under provisions of the consumer protection act providing for class actions, G. L. c. 93A, §§ 9 (2) and 11.[6]

In response, Dell moved to stay the proceedings and to compel arbitration according to the "Dell Terms and Conditions of Sale" (terms) and pursuant to the FAA, 9 U.S.C. § 4. The terms in effect at the time of the plaintiffs' purchases contain an arbitration clause compelling arbitration of any claim against Dell (but not binding Dell in connection with any claims it may

United States of America, the Pacific Legal Foundation, and the New England Legal Foundation in support of the defendants; and the amicus brief of Public Justice, P.C., and Public Citizen, Inc., in support of the plaintiffs.

[5]Because in this case we are effectively reconsidering our ruling in *Feeney v. Dell Inc.*, 454 Mass. 192 (2009) (*Feeney I*), all the facts that were relevant then are relevant now; the record has merely added a new chapter. Accordingly, we borrow heavily from *Feeney I* in reciting the factual and procedural background, abridging and supplementing that background where appropriate.

[6]General Laws c. 93A, § 9 (2), provides in pertinent part:

"Any persons entitled to bring [an action under § 9 (1)] may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons . . . ."

have against a customer) and mandating that any such claims be arbitrated on an individual basis. Specifically, the terms provide that claims against Dell "arising from or relating to this Agreement" shall be resolved "exclusively and finally" by arbitration, and that the arbitration "will be limited solely to the dispute or controversy between Customer and Dell."[7] The effect of these provisions is to prohibit a Dell customer from participating in a class action — whether by litigation or arbitration — against Dell.

The plaintiffs responded that the prohibition on class actions in the arbitration clause was unconscionable and undermined "the very purpose of the Massachusetts Consumer Protection Act." The motion to compel arbitration should have been denied, they argued, because, inter alia, the terms unilaterally preclude class actions. A judge in the Superior Court allowed Dell's motion to compel arbitration and the plaintiffs sought interlocutory review pursuant to G. L. c. 231, § 118, first par. A single justice of the Appeals Court denied the plaintiffs' petition.

Unable to appeal from the decision of the single justice, see

---

[7]The paragraph entitled "Binding Arbitration" in the terms applicable to John A. Feeney provides in full:

"ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE, WHETHER PREEXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, COMMON LAW, INTENTIONAL TORT, AND EQUITABLE CLAIMS) AGAINST DELL, its agents, employees, successors, assigns, or affiliates (collectively for purposes of this paragraph . . . 'Dell'), arising from or relating to this Agreement, its interpretation, or the breach, termination, or validity thereof, the relationships which result from this Agreement (including, to the full extent permitted by applicable law, relationships with third parties who are not signatories to this Agreement), Dell's advertising, or any related purchase SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under its Code of Procedure then in effect . . . . The arbitration will be limited solely to the dispute or controversy between Customer and Dell. Any award of the arbitrator(s) shall be final and binding on each of the parties and may be entered as a judgment in any court of competent jurisdiction. Information may be obtained and claims may be filed with the NAF . . . ."

The corresponding paragraph in the terms applicable to Dedham Health and Athletic Complex includes a provision concerning warranty claims that is not relevant to this appeal.

*Ashford* v. *Massachusetts Bay Transp. Auth.*, 421 Mass. 563, 566 567 (1995), Feeney and Dedham Health each filed a claim of arbitration "under protest" in November, 2004. Their requests for class certification were denied by an arbitrator of the National Arbitration Forum (NAF). Relying on the provisions of the Dell terms and on "[c]lear rules of contract interpretation and construction," the arbitrator concluded that "class action relief has been waived, by the parties," and was not available in the arbitration despite the plaintiffs' "compelling arguments in favor of this relief." The arbitrator conducted a consolidated hearing on the merits of the plaintiffs' individual claims, ruled in favor of the defendants on the merits, and dismissed the plaintiffs' respective claims with prejudice.

In February, 2008, the plaintiffs moved in the Superior Court to vacate the arbitration award and to reconsider the orders allowing the defendants' motion to compel arbitration. In turn, the defendants moved to confirm the arbitration award and to dismiss the case. A different judge denied the plaintiffs' motions, allowed the defendants' motion, and dismissed the case with prejudice. The plaintiffs appealed, and we granted their application for direct appellate review and issued our first opinion in this case. See *Feeney I, supra.*

In *Feeney I*, we reversed the order compelling arbitration and invalidated the arbitration clause, but ordered the plaintiffs' complaint dismissed without prejudice for failure to state a claim under G. L. c. 93A.[8] *Feeney I, supra* at 213-214. Following dismissal on remand, the plaintiffs filed a third amended complaint in which they allege facts that, if proved, could constitute a violation of G. L. c. 93A.[9] See *id.* (suggesting plaintiffs' allegations on appeal could conceivably state claim under G. L. c. 93A if properly pleaded).

---

[8]We did so because the plaintiffs did not allege that Dell failed to remit to the Commonwealth the tax it collected on an alleged improper basis. *Feeney I, supra* at 212-213. Accordingly, the plaintiffs had not alleged that Dell intended to profit from its actions, or alleged that Dell was not acting pursuant to legislative mandate. *Id.*

[9]In short, the plaintiffs allege that Dell collected tax in connection with the sales of service contracts in an attempt to transfer the tax burden on repair parts for Dell hardware from Dell to the customer, thus increasing profits from sales of the service contracts.

While the case was on remand, the United States Supreme Court issued its opinion in *Concepcion.* The defendants filed a renewed motion to confirm the arbitration award of dismissal with prejudice, arguing that *Concepcion* abrogated our decision in *Feeney I.* A judge in the Superior Court denied the defendants' motion, and we granted direct appellate review.

2. Feeney I. We invalidated the arbitration clause in *Feeney I* because we concluded that the class action prohibition "contravenes Massachusetts public policy." *Feeney I, supra* at 199, quoting *Beacon Hill Civic Ass'n* v. *Ristorante Toscano, Inc.,* 422 Mass. 318, 321 (1996) (noting that "it is 'universally accepted' that public policy sometimes outweighs the interest in freedom of contract, and in such cases the contract will not be enforced"). We premised our conclusion in part on "expressions of three branches of Massachusetts government indicat-[ing] that the public policy of the Commonwealth strongly favors G. L. c. 93A class actions." *Feeney I, supra* at 200. Perhaps most importantly, the Legislature expressly provided for class actions in G. L. c. 93A, §§ 9 (2) and 11, and the legislative history of those enactments indicates that the Legislature intended to provide for the vindication of small-value claims. *Id.,* and cases cited. See *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. 688, 697-700 (1975) (Legislature amended c. 93A to allow for private remedies as result of large number of complaints lodged with Attorney General).

Examining the legislative history of G. L. c. 93A, we remarked that on recognizing that "causes for which advocates cannot be obtained are, in effect, not adjudicable," *Feeney I, supra* at 201, quoting *Slaney* v. *Westwood Auto, Inc., supra* at 699, the Legislature amended c. 93A in 1969, see St. 1969, c. 690, to include "provisions for a minimum recovery, attorney's fees, treble damages in certain cases, and most relevant to [*Feeney I*], class actions." *Feeney I, supra,* citing *Slaney* v. *Westwood Auto, Inc., supra* at 699-700. In doing so, the Legislature recognized that "[t]he right to a class action in a consumer protection case is of particular importance where, as here, aggregation of small claims is likely the only realistic option for pursuing a claim." *Feeney I, supra* at 202, citing *Leardi* v. *Brown,* 394 Mass. 151, 164 (1985) ("one of the basic purposes"

of G. L. c. 93A was to provide "a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group"). See *Amchen Prods., Inc.* v. *Windsor*, 521 U.S. 591, 617 (1997).

Dell's class action prohibition, we concluded, "undermines this policy and, in so doing, defeats 'the presumption' that arbitration provides 'a fair and adequate mechanism for enforcing statutory rights.' " *Feeney I, supra,* quoting *Kristian* v. *Comcast Corp.,* 446 F.3d 25, 54 (1st Cir. 2006). See *Feeney I, supra* at 203, citing *Carnegie* v. *Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004), cert. denied sub nom. *H&R Block, Inc.* v. *Carnegie,* 543 U.S. 1051 (2005) ("realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30"). See *Dale* v. *Comcast Corp.,* 498 F.3d 1216, 1224 (11th Cir. 2007) ("Corporations should not be permitted to use class action waivers as a means to exculpate themselves from liability for small-value claims").

In conclusion, we summarized our holding in *Feeney I* as follows:

> "We decline to enforce a prohibition on class actions in a consumer contract where to do so would in effect sanction a waiver of the right to proceed in a class action under G. L. c. 93A. Allowing companies that do business in Massachusetts, with its strong commitment to consumer protection legislation, to insulate themselves from small value consumer claims creates the potential for countless customers to be without an effective method to vindicate their statutory rights, a result clearly at odds with our public policy."

*Id.* at 205.

In order to assess the extent to which the *Concepcion* decision undoes our reasoning in *Feeney I* regarding the validity of class waivers in arbitration clauses of consumer agreements, and whether any of our conclusions in that case have continuing viability, it is first necessary to place *Concepcion* in the context of six decades of the United States Supreme Court jurisprudence expanding the scope and preemptive effect of the FAA.

3. *The Federal Arbitration Act before* Concepcion. Congress enacted the FAA in 1925 "in response to widespread judicial hostility to arbitration agreements." *Concepcion, supra* at 1745, citing *Hall St. Assocs., LLC* v. *Mattel, Inc.*, 552 U.S. 576, 581 (2008). Section 2, the "primary substantive provision of the Act," *Moses H. Cone Memorial Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), provides as follows:

> "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

In its efforts over time to define the limits of the FAA, the United States Supreme Court has generally expanded the scope and preemptive effect of the statute. In one of its earliest decisions interpreting the FAA, the Supreme Court held in *Wilko* v. *Swan*, 346 U.S. 427, 437 (1953), overruled by *Rodriguez de Quijas* v. *Shearson/American Express, Inc.*, 490 U.S. 477, 480 (1989), that claims under the Securities Act of 1933 were not subject to arbitration because "the protective provisions of the Securities Act require the exercise of judicial direction to fairly assure their effectiveness." Unlike the types of disputes frequently submitted to arbitration at that time, the Court noted that "[d]etermination of the quality of a commodity or the amount of money due under a contract is not the type of issue here involved," and remarked that "[e]ven though the provisions of the Securities Act, advantageous to the buyer, apply [in arbitration], their effectiveness in application is lessened in arbitration as compared to judicial proceedings." *Wilko* v. *Swan, supra* at 435. See *Concepcion, supra* at 1759 (Breyer, J., dissenting) ("Insofar as Congress considered detailed forms of arbitration at all, it may well have thought that arbitration would be used primarily where merchants sought to resolve disputes of fact, not law, under the customs of their industries, where the parties possessed roughly equivalent bargaining power"). Therefore, the Court concluded, a prospective agreement to arbitrate claimed violations of the Securities Act constituted a "condition, stipula-

tion, or provision binding any person acquiring any security to waive compliance with any provision" of the Securities Act, which the Securities Act itself declared "void." *Wilko* v. *Swan*, *supra* at 430. See 15 U.S.C. § 77n (2006).

In its next major decision interpreting the FAA, *Scherk* v. *Alberto-Culver Co.*, 417 U.S. 506, 515 (1974), the Supreme Court distinguished *Wilko* v. *Swan, supra*, and concluded that disputes under the Securities Exchange Act of 1934 are subject to arbitration where international conflict-of-laws problems would foreseeably arise in a judicial forum and could be avoided by submitting the dispute to arbitration. The Supreme Court reached this conclusion despite "[a]ccepting the premise . . . that the operative portions of the language of the 1933 Act relied upon in *Wilko* are contained in the Securities Exchange Act of 1934." *Id.*

In *Moses H. Cone Memorial Hosp.* v. *Mercury Constr. Corp.*, *supra*, the Supreme Court held that the FAA was applicable in both Federal and State courts, stating, "Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Accordingly, the Court concluded, "Congress can hardly have meant that an agreement to arbitrate can be enforced against a party who attempts to litigate an arbitrable dispute in federal court, but not against one who sues on the same dispute in state court." *Id.* at 26 n.34.

In *Southland Corp.* v. *Keating*, 465 U.S. 1, 10 (1984), the Court considered whether the FAA preempted a provision of the California Franchise Investment Law that stated, "Any condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this law or any rule or order hereunder is void," insofar as the California Supreme Court had interpreted that provision to require a judicial resolution of a dispute arising under the law. The Court stated, "In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution

of claims which the contracting parties agreed to resolve by arbitration." *Id.* See *Perry* v. *Thomas*, 482 U.S. 483 (1987) (holding FAA preempted section of California wage law that mandated judicial forum for resolution of disputes under that law). The Court continued that "the purpose of the [FAA] was to assure those who desired arbitration and whose contracts related to interstate commerce that their expectations would not be undermined by federal judges, or . . . by state courts or legislatures." *Southland Corp.* v. *Keating, supra* at 13, quoting *Metro Indus. Painting Corp.* v. *Terminal Constr. Co.*, 287 F.2d 382, 387 (2d Cir.) (Lumbaid, C.J., concurring), cert. denied, 368 U.S. 817 (1961). In no uncertain terms, the Court concluded:

> "We discern only two limitations on the enforceability of arbitration provisions governed by the [FAA]: they must be part of a written maritime contract or a contract 'evidencing a transaction involving commerce' and such clauses may be revoked upon 'grounds as exist at law or in equity for the revocation of any contract.' We see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law."

*Southland Corp.* v. *Keating, supra* at 10-11.

Next, in *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) (*Mitsubishi Motors*), the Supreme Court considered whether an antitrust claim under the Sherman Act is properly subject to arbitration where the parties' contract arises from an international transaction. In ruling that the antitrust claim must be arbitrated according to the agreement, the Court stated:

> "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration. We must assume that if Congress intended the substantive protection afforded by a statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text

or legislative history. . . . Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."

*Id.* at 628.

The Supreme Court in *Mitsubishi Motors, supra* at 635, also rejected the plaintiff's argument that the function of an award of treble damages under the Clayton Act as a "chief tool in the antitrust enforcement scheme," see *Brunswick Corp.* v. *Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 485-486 (1977), "compel[s] the conclusion that it may not be sought outside an American court." *Mitsubishi Motors, supra.* The Court concluded that an award of treble damages, "[n]otwithstanding its important incidental policing function," constituted a private remedy intended to compensate a plaintiff and that there was no reason the plaintiff's claim for such an award could not be arbitrated. *Id.* at 635-636.

Importantly, the Court went on to state that "in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy." *Id.* at 637 n.19. However, the Court reasoned that "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Id.* at 637.

In *Shearson/American Express Inc.* v. *McMahon*, 482 U.S. 220 (1987), the Supreme Court again considered the arbitrability of claims under the Securities Exchange Act of 1934, as well as claims under the Racketeer Influenced and Corrupt Organizations Act (RICO). The Court extended its holding in *Scherk* v. *Alberto-Culver Co., supra*, to securities claims arising from domestic agreements, reasoning that Congress did not intend to exempt such claims from the FAA. The Court also rejected the plaintiffs' argument, as it had in *Mitsubishi Motors*, that the availability of treble damages under RICO served a public purpose and made RICO claims nonarbitrable. It concluded that the plaintiffs "may effectively vindicate their RICO

claim in an arbitral forum, and therefore there is no inherent conflict between arbitration and the purposes underlying [the provision authorizing treble damages]." *Shearson/American Express Inc.* v. *McMahon, supra* at 242.

Based on the Supreme Court's demonstrated reluctance to hold Federal statutory claims to be nonarbitrable, it was only a matter of time before the Court overruled its decision in *Wilko* v. *Swan, supra,* which held claims under the Securities Act of 1933 to be nonarbitrable. In *Rodriguez de Quijas* v. *Shearson/American Express, Inc.,* 490 U.S. 477, 480 (1989), the Court did just that, remarking that the reasoning in *Wilko* v. *Swan* was pervaded by "the old judicial hostility to arbitration." *Rodriguez de Quijas* v. *Shearson/American Express, Inc., supra,* quoting *Kulukundis Shipping Co., S/A* v. *Amtorg Trading Corp.,* 126 F.2d 978, 985 (2d Cir. 1942).

In *Gilmer* v. *Interstate/Johnson Lane Corp.,* 500 U.S. 20 (1991) (*Gilmer*), the Supreme Court continued its practice of holding Federal statutory claims arbitrable, this time ruling that an employee's claim under the Age Discrimination in Employment Act of 1967 (ADEA) may be subject to arbitration. In response to the plaintiff's argument that "the ADEA is designed not only to address individual grievances, but also to further important social policies," *id.* at 27, the Court remarked:

> "The Sherman Act, the Securities Exchange Act of 1934, RICO, and the Securities Act of 1933 all are designed to advance important public policies, but . . . claims under those statutes are appropriate for arbitration. '[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function.' "

*Id.* at 28, quoting *Mitsubishi Motors, supra* at 637.

Addressing for the first time the issue of the availability of class proceedings in arbitration, the Court remarked that "even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator, the fact that the [ADEA] provides for the possibility of bringing a collective

action does not mean that individual attempts at conciliation were intended to be barred." *Gilmer, supra* at 32, quoting *Nicholson* v. *CPC Int'l Inc.*, 877 F.2d 221, 241 (3d Cir. 1989) (Becker, J., dissenting).

In *Green Tree Fin. Corp.-Ala.* v. *Randolph*, 531 U.S. 79 (2000) (*Randolph*), the Supreme Court considered the arbitrability of claims under the Truth in Lending Act and the Equal Credit Opportunity Act. Responding to the plaintiff's claims that large arbitration costs would prevent her from pursuing her claims in arbitration, the Court stated:

> "It may well be that the existence of large arbitration costs could preclude a litigant such as [the plaintiff] from effectively vindicating her federal statutory rights in the arbitral forum. But the record does not show that [she] will bear such costs if she goes to arbitration. . . . The record reveals only the arbitration agreement's silence on the subject, and that fact alone is plainly insufficient to render it unenforceable."

*Id.* at 90-91.

Finally, in the last major FAA-related decision before *Concepcion*, the Supreme Court held in *Stolt-Nielsen S.A.* v. *AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010) (*Stolt-Nielsen*), that where an arbitration agreement has not contemplated the availability of class arbitration, class arbitration may not be compelled.[10] In support of its holding, the Court stated that the "FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion,' " *id.* at 1773, quoting *Volt Info. Sciences, Inc.* v. *Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989), and concluded that "because class-action arbitration changes the nature of arbitration to such a degree . . . it cannot be presumed the parties consented to it by simply agreeing to

---

[10]Notably, it was a panel of arbitrators and not a court that had construed the arbitration agreement in *Stolt-Nielsen* to permit class arbitration. See *Stolt-Nielsen S.A.* v. *AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1766 (2010) (*Stolt-Nielsen*). The Supreme Court nevertheless held that the arbitrators had "exceeded [their] powers" in compelling a party to submit to class arbitration where there was no "contractual basis for concluding that the party agreed to do so." *Id.* at 1770, 1775.

submit their disputes to an arbitrator."[11] *Stolt-Nielsen, supra* at 1775.

> "In sum, the United States Supreme Court has recognized that: (1) the FAA embodies 'a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary' [*Moses H. Cone Memorial Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)]; (2) a state law is preempted if it singles out an arbitration agreement for different treatment than contracts in general [*Southland Corp.* v. *Keating*, 465 U.S. 1, 10 11, 13 (1984)]; (3) the FAA was enacted 'to place an arbitration agreement "upon the same footing as other contracts . . ." . . . and to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate' [*Dean Witter Reynolds Inc.* v. *Byrd*, 470 U.S. 213, 219-220 (1985)]; (4) the FAA was also intended to enforce private agreements to arbitrate and encourage the efficient and speedy resolution of disputes [*id.* at 221]; and (5) the FAA was necessary to overcome 'the old judicial hostility to arbitration' [*Rodriguez de Quijas* v. *Shearson/American Express, Inc.*, 490 U.S. 477, 480 (1989)].

---

[11]On the fundamental differences between bilateral and class arbitration, the Supreme Court stated as follows:

> "Consider just some of the fundamental changes brought about by the shift from bilateral arbitration to class-action arbitration. An arbitrator chosen according to an agreed-upon procedure . . . no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties. Under the [American Arbitration Association's Supplementary Rules for Class Arbitrations (as effective Oct. 8, 2003)], 'the presumption of privacy and confidentiality' that applies in many bilateral arbitrations 'shall not apply in class arbitrations,' . . . thus potentially frustrating the parties' assumptions when they agreed to arbitrate. The arbitrator's award no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well. And the commercial stakes of class-action arbitration are comparable to those of class-action litigation . . . even though the scope of judicial review is much more limited. We think that the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." (Citations omitted.)

*Stolt-Nielsen, supra* at 1776.

"At the same time, the high court has stated that: (1) 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function' [*Mitsubishi Motors, supra* at 637]; (2) if an arbitration agreement operates 'as a prospective waiver of a party's right to pursue statutory remedies,' it will be 'condemn[ed] . . . as against public policy' [*id.* at 637 n.19]; (3) '[b]y agreeing to arbitrate a statutory claim, [an employee] does not forgo the substantive rights afforded by the statute; [he or she] only submits to their resolution in an arbitral, rather than a judicial, forum' [*id.* at 628] . . . ."

*Franco* v. *Arakelian Enters., Inc.*, 211 Cal. App. 4th 314, 344 (2012).[12]

4. *Concepcion*. In *Concepcion, supra* at 1744, the United States Supreme Court considered the question "whether the FAA prohibits States from conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures."[13]

A brief recitation of the facts is necessary. In 2002, Vincent and Liza Concepcion purchased AT&T service, which was advertised as including free cellular telephones. *Id.* at 1744. After being charged $30.22 in sales tax on the supposedly "free" telephones, the Concepcions initiated a class action lawsuit in Federal District Court alleging that AT&T had engaged in

---

[12]Pursuant to California Rule of Court 8.1105(e)(1), *Franco* v. *Arakelian Enters., Inc.*, 211 Cal. App. 4th 314 (2012), has been superseded by a grant of review by the California Supreme Court dated February 13, 2013. However, the California Supreme Court has not issued a decision overruling the Court of Appeal.

[13]Although the "Question Presented" in the petition for writ of certiorari asked, "Whether the [FAA] preempts States from conditioning the enforcement of an arbitration agreement on the availability of particular procedures — here, class-wide arbitration — *when those procedures are not necessary to ensure that the parties to the arbitration agreement are able to vindicate their claims*" (emphasis added), the emphasized portion was notably absent from the Court's statement of the issue in its opinion. Compare petition for writ of certiorari, *AT&T Mobility LLC* v. *Concepcion*, No. 09-893 (U.S. Jan. 25, 2010), with *AT&T Mobility LLC* v. *Concepcion*, 131 S. Ct. 1740, 1744 (2011) (*Concepcion*) ("We consider whether the FAA prohibits States from conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures").

false advertising and fraud.[14] *Id.* In response, AT&T moved to compel arbitration pursuant to the arbitration clause in its standard service agreement, which included a class action waiver. Significantly, the arbitration clause provided that in the event the parties proceeded to arbitration and the customer received an award greater than AT&T's last written settlement offer, AT&T was required to pay the customer a $7,500 minimum recovery and twice the amount of the customer's attorney's fees. *Id.*[15]

Relying on the California Supreme Court's decision in *Discover Bank* v. *Superior Court*, 36 Cal. 4th 148 (2005) (*Discover Bank*), the District Court had found that the arbitration provision was "unconscionable because AT&T had not shown that bilateral arbitration adequately substituted for the deterrent effects of class actions," and accordingly denied AT&T's motion to compel individual arbitration, instead directing classwide arbitration. *Concepcion*, *supra* at 1744, 1745. See Laster *vs.* T-Mobile USA, Inc., U.S. Dist. Ct., No. 05CV1167DMS (AJB), slip op. at 20 (S.D. Cal. Aug. 11, 2008), aff'd, 584 F.3d 849 (9th Cir. 2009), rev'd sub nom. *Concepcion*, *supra*. Despite finding the class action waiver unconscionable pursuant to the *Discover Bank* rule, the District Court "described AT&T's arbitration agreement favorably, noting, for example, that the informal dispute-resolution process was 'quick, easy to use' and

---

[14]The Concepcions pleaded claims under the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.; False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.; and Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770 et seq. See Laster *vs.* T-Mobile USA, Inc., U.S. Dist. Ct., No. 05CV1167DMS (AJB), slip op. at 1-2 (S.D. Cal. Aug. 11, 2008), aff'd, 584 F.3d 849 (9th Cir. 2009), rev'd sub nom. *Concepcion*, *supra*.

[15]The Court in *Concepcion* also noted several other terms of the arbitration agreement, which it considered to be favorable to the customer:

> "[T]he agreement specifies that AT&T must pay all costs for nonfrivolous claims; that arbitration must take place in the county in which the customer is billed; that, for claims of $10,000 or less, the customer may choose whether the arbitration proceeds in person, by telephone, or based only on submissions; that either party may bring a claim in small claims court in lieu of arbitration; and that the arbitrator may award any form of individual relief, including injunctions and presumably punitive damages."

*Id.* at 1744.

likely to 'promp[t] full or . . . even excess payment to the customer *without* the need to arbitrate or litigate'; that the $7,500 premium functioned as 'a substantial inducement for the consumer to pursue the claim in arbitration' if a dispute was not resolved informally; and that consumers who were members of a class would likely be worse off" (emphasis in original). *Concepcion, supra* at 1745, quoting Laster *vs.* T-Mobile USA, Inc., *supra* at 16. The United States Court of Appeals for the Ninth Circuit affirmed the District Court, and the Supreme Court granted certiorari. *Concepcion, supra.*

According to the Supreme Court's formulation, § 2 of the FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* at 1746, quoting *Doctor's Assocs., Inc.* v. *Casarotto*, 517 U.S. 681, 687 (1996). See *Perry* v. *Thomas*, 482 U.S. 483, 492 n.9 (1987). According to the Court, "The question in this case is whether § 2 preempts California's rule classifying most collective-arbitration waivers in consumer contracts as unconscionable." *Concepcion, supra* ("We refer to this rule as the *Discover Bank* rule").

The *Discover Bank* rule, which the United States Court of Appeals for the Ninth Circuit characterized as "a refinement of the unconscionability analysis applicable to contracts generally in California," *Laster* v. *AT&T Mobility LLC*, 584 F.3d 849, 857 (9th Cir. 2009), rev'd sub nom. *Concepcion, supra*, quoting *Shroyer* v. *New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 987 (9th Cir. 2007), was expressed by the California Supreme Court as follows:

> "[W]hen the [class action] waiver [in an arbitration agreement] is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then . . . the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud,

> or willful injury to the person or property of another.' . . .
> Under these circumstances, such waivers are unconscionable under California law and should not be enforced."

*Discover Bank, supra* at 162, quoting Cal. Civ. Code § 1668. The Supreme Court in *Concepcion* noted that "California courts have frequently applied this rule to find arbitration agreements unconscionable." *Concepcion, supra* at 1746, and cases cited.

In analyzing whether "the *Discover Bank* rule, given its origins in California's unconscionability doctrine and California's policy against exculpation, is a ground that 'exist[s] at law or in equity for the revocation of any contract' under FAA § 2," *Concepcion, supra* at 1746, quoting 9 U.S.C. § 2, and thus saved from FAA preemption, the Supreme Court set forth the following framework for evaluating issues of preemption under the FAA:

> "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA. . . . But the inquiry becomes more complex when a doctrine normally thought to be generally applicable, such as duress or, as relevant here, unconscionability, is alleged to have been applied in a fashion that disfavors arbitration. In *Perry* v. *Thomas,* [*supra* at 492 n.9,] for example, we noted that the FAA's preemptive effect might extend even to grounds traditionally thought to exist 'at law or in equity for the revocation of any contract.' . . . We said that a court may not 'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what . . . the state legislature cannot."

*Concepcion, supra* at 1747, quoting *Perry* v. *Thomas, supra.*

The Court then began its analysis, noting by way of analogy that the FAA would preempt a hypothetical State rule holding unconscionable or unenforceable as against public policy consumer contracts that restrict the consumer's right to full discovery — on the ground that such contracts "enable companies to hide their wrongdoing" and are therefore unlawfully exculpatory — because "[i]n practice, of course, the rule would have a disproportionate impact on arbitration agreements"

even though "it would presumably apply to contracts purporting to restrict discovery in litigation as well." *Concepcion, supra* at 1747. The Court offered, as similar examples, State rules "classifying as unconscionable arbitration agreements that fail to abide by the Federal Rules of Evidence, or that disallow an ultimate disposition by a jury (perhaps termed 'a panel of twelve lay arbitrators' to help avoid preemption)." *Id.* The Court rejected the notion that such rules would be "applicable to 'any' contract and thus preserved by § 2," even if such rules were at least nominally applicable to both arbitration and litigation. *Id.* The Court defended such examples as "not fanciful, since the judicial hostility towards arbitration that prompted the FAA had manifested itself in 'a great variety' of 'devices and formulas' declaring arbitration against public policy." *Id.*, quoting *Robert Lawrence Co.* v. *Devonshire Fabrics, Inc.*, 271 F.2d 402, 406 (2d Cir. 1959), cert. dismissed, 364 U.S. 801 (1960).

Rejecting the Concepcions' contention that the foregoing examples are "a far cry from this case," the Court countered:

> "The overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings. *Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA*" (emphasis added).

*Concepcion, supra* at 1748. According to the Court in *Concepcion*, the *Discover Bank* rule impermissibly interfered with arbitration for the following reasons:

> "Although the rule does not require classwide arbitration, it allows any party to a consumer contract to demand it ex post. The rule is limited to adhesion contracts . . . but the times in which consumer contracts were anything other than adhesive are long past. . . . The rule also requires that damages be predictably small, and that the consumer allege a scheme to cheat consumers. . . . The former requirement, however, is toothless and malleable (the Ninth Circuit has held that damages of $4,000 are

sufficiently small), and the latter has no limiting effect, as all that is required is an allegation. Consumers remain free to bring and resolve their disputes on a bilateral basis under *Discover Bank*, and some may well do so; but there is little incentive for lawyers to arbitrate on behalf of individuals when they may do so for a class and reap far higher fees in the process. And faced with inevitable class arbitration, companies would have less incentive to continue resolving potentially duplicative claims on an individual basis." (Citations omitted.)

*Concepcion*, *supra* at 1750.

"The conclusion follows [from the Supreme Court's decision in *Stolt-Nielsen*] that class arbitration, to the extent it is manufactured by *Discover Bank* rather than consensual, is inconsistent with the FAA." *Concepcion*, *supra* at 1750-1751. "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *Id.* at 1752, citing *Rent A Center, West, Inc.* v. *Jackson*, 130 S. Ct. 2772, 2774 (2010). While parties may of course agree to class arbitration, class arbitration "is not arbitration as envisioned by the FAA, lacks its benefits, and therefore may not be required by state law." *Concepcion*, *supra* at 1753.

Finally, in response to an argument made in the dissenting opinion that "class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system," the Court remarked that "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.*, citing *id.* at 1760-1761 (Breyer, J., dissenting). The Court further noted that due in part to the $7,500 plus doubled attorney's fees "bounty clause"[16] provision, "the claim here was most unlikely to go unresolved," and the consumers bound by the agreement were " 'essentially guarantee[d]' to be made whole," *id.* at 1753, quoting *Laster* v. *AT&T Mobility LLC*, *supra* at 856 n.9, and that "the Concepcions were *better off* under their arbitration agreement with AT&T than they would have been as participants in a class action" (emphasis in

---

[16]See Gilles & Friedman, After Class: Aggregate Litigation in the Wake of *AT&T Mobility* v. *Concepcion*, 79 U. Chi. L. Rev. 623, 643 (2012) (defining "bounty clause" in consumer arbitration agreements).

original). *Concepcion, supra* at 1753, citing Laster *vs.* T-Mobile USA, Inc., *supra* at 17.

Based on the foregoing rationale, the Supreme Court ultimately concluded that "[b]ecause it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the Congress,' . . . California's *Discover Bank* rule is preempted by the FAA." *Concepcion, supra* at 1753.

5. *Class waivers after* Concepcion. We begin by noting that *Concepcion* did not render the savings clause in § 2 a dead letter. While application of the savings clause has been significantly constrained by *Concepcion, Stolt-Nielsen,* and their predecessors, there must remain circumstances where "grounds as exist at law or in equity for the revocation of any contract" may be properly invoked to void an arbitration agreement containing a class waiver. The question we seek to answer today, one that courts across the country have struggled with in the wake of *Concepcion,* is under what conditions a State court may still invalidate an arbitration agreement containing a class waiver as unconscionable or against public policy without running afoul of the FAA.

We accept that following *Concepcion,* the inability to aggregate claims does not always mean that the plaintiff has no remedy for a wrong. However, an arbitration clause cannot operate in practice to deny a willing plaintiff any and all practical means of pursuing a claim against a defendant. As the Supreme Court acknowledged in *Randolph, supra* at 90:

> "It may well be that the existence of large arbitration costs could preclude a litigant such as [the plaintiff] from effectively vindicating her federal statutory rights in the arbitral forum [thus rendering it unenforceable]."[17]

And as commentators have pointed out, *Concepcion* did not even cite *Randolph,* so "[i]t would be quite a stretch to argue that *Concepcion* cuts off a claimant's ability to avoid an arbitra-

---

[17]The Supreme Court did not need to confront the possibility that "large arbitration costs" would preclude the vindication of a plaintiff's rights because the record in that case did not show that the plaintiff would have to bear such costs, and the arbitration agreement was silent on the subject. *Green Tree Fin. Corp.-Ala.* v. *Randolph,* 531 U.S. 79, 90-91 (2000).

tion clause by making the sort of case-by-case showing pre-scribed in *Randolph.*" Gilles & Friedman, After Class: Ag-gregate Litigation in the Wake of *AT&T Mobility* v. *Concepcion,* 79 U. Chi. L. Rev. 623, 642 & n.92 (2012) (Gilles & Fried-man), citing *Shalala* v. *Illinois Council on Long Term Care, Inc.,* 529 U.S. 1, 18 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority sub silentio").

We assume *Randolph* remains good law on this point, so the question is whether a *Randolph*-type factual demonstration survives *Concepcion* where the claims at issue arise under State law rather than Federal law. In *Randolph, supra* at 83, the plaintiff asserted claims under the Truth in Lending Act and the Equal Credit Opportunity Act, and Dell is correct that the "vindication of statutory rights" doctrine advanced in dicta in that case, *Mit-subishi Motors,* and others, and invoked in *In re Am. Express Merchants' Litig.,* 667 F.3d 204 (2d Cir.), cert. granted sub nom. *American Express* v. *Italian Colors Restaurant,* 133 S. Ct. 594 (2012) (*Amex III*), and *Sutherland* v. *Ernst & Young LLP,* 847 F. Supp. 2d 528, 537 (S.D.N.Y. 2012) (*Sutherland II*), applies only when the rights being asserted arise under a *Federal* statute. See *Kilgore* v. *KeyBank Nat'l Ass'n,* 673 F.3d 947, 961 (2012), aff'd on rehearing, Nos. 09-16703, 10-15934 (9th Cir. 2013) (en banc); Orman *vs.* Citigroup, Inc., U.S. Dist. Ct., No. 11 Civ. 7086 (DAB), slip op. at 7 (S.D.N.Y. Sept. 12, 2012) ("Unfortu-nately for [p]laintiffs, the entire line of case law in which the vindication of statutory rights analysis was developed deals with federal, as opposed to state, statutory rights").

As the court explained in Orman *vs.* Citigroup, Inc., *supra* at 8:

> "Indeed, the vindication of statutory rights doctrine has its origins in principles of statutory interpretation and is derived from an inference that Congress did not intend to preempt rights it had created in other federal statutes when it passed the FAA. Thus there is no principled reason to apply the doctrine to bar arbitration of claims grounded in state laws which were not created by Congress."

Accordingly, so it is argued, the FAA must be harmonized with conflicting Federal statutes but not conflicting State statutes,

and a properly enacted Federal statute will always trump a
conflicting State statute regardless of the intent of the State
Legislature to avoid preemption.[18] See *Kilgore* v. *KeyBank
Nat'l Ass'n, supra* at 961; Orman *vs.* Citigroup, Inc., *supra*.
See also Gilles & Friedman, *supra* at 641 (explaining differ-
ence between preemption analysis and Federal harmonizing
principle).[19]

This argument, however, misses the point. Harmonization is
plainly not the issue. The real issue is whether a State court's
invalidation of an arbitration agreement that effectively precludes
consumers from obtaining a remedy to which they are lawfully
entitled "stands as an obstacle to the accomplishment and execu-
tion of the full purposes and objectives of Congress." *Concep-
cion, supra* (considering likelihood that plaintiffs' State law
claim can be resolved in individual arbitration); *In re Checking
Account Overdraft Litig. MDL No. 2036*, 685 F.3d 1269, 1281-
1282 (11th Cir. 2012) (concluding FAA did not preempt invoca-
tion of State unconscionability doctrine to sever fee-shifting

---

[18]Recognizing that *Concepcion* will "reduce the effectiveness of state
laws" and that "state legislatures will find their purposes frustrated," the
United States Court of Appeals for the Ninth Circuit in *Kilgore* v. *KeyBank
Nat'l Ass'n*, 673 F.3d 947, 960 (2012), aff'd on rehearing, Nos. 09-16703,
10-15934 (9th Cir. 2013) (en banc), nevertheless characterized as a "mistake[]"
the notion that we must "regard[] the motivation of state legislators as relevant
to determining whether federal law preempts their legislation." *Id.* at 961. The
*Kilgore* court continued, stating that "external constraints [on the FAA] may
be found only in other federal statutes, not in state law or policy." *Id.* The
court concluded, "In the end, we circle back to the Supremacy Clause. The
FAA is 'the supreme law of the land,' U.S. Const. art. VI, and that law renders
arbitration agreements enforceable so long as the savings clause is not
implicated." *Id.* at 963.

[19]See, e.g., *Madeira* v. *Affordable Hous. Found., Inc.*, 469 F.3d 219, 237
(2d Cir. 2006) (pointing to "important legal distinction between" preemption
analysis, on the one hand, and cases where courts seek "to reconcile two
federal statutes to ensure that one did not trench on the other, a task routinely
performed by federal courts"); *Tufariello* v. *Long Island R.R. Co.*, 458 F.3d
80, 86 (2d Cir. 2006), quoting *Sprint Spectrum LP* v. *Mills*, 283 F.3d 404,
414-415 (2d Cir. 2002) ("[T]he preemption doctrine flows from the
Constitution's Supremacy Clause, U.S. Const. Art. VI, cl. 2, which 'invalidates
state laws that interfere with, or are contrary to federal law.' . . . The doctrine
is inapplicable to a potential conflict between two federal statutes"); *Trol-
linger* v. *Tyson Foods, Inc.*, 370 F.3d 602, 608 (6th Cir. 2004) ("preemption
does not describe the effect of one federal law upon another; it refers to the
supremacy of federal law over state law when Congress, acting within its
enumerated powers, intends one to displace the other").

provision from arbitration agreement where effect of provision was to prevent bringing of claims).[20] We do not interpret the FAA so broadly as to deny a consumer any remedy, nor do we discern any such congressional intent. A State court's invalidation on these grounds survives not because it can be harmonized with the FAA, but because the FAA does not conflict with such a ruling and therefore does not preempt it.

Even in light of *Concepcion*, we do not conclude that there is an irreconcilable conflict between the FAA's interest in ensuring the enforceability of agreements to arbitrate and a State's interest in voiding contracts that create de facto immunity from private civil liability for violations of State law merely because that immunity was procured through the device of an arbitration clause. A case-specific factual showing of the kind envisioned in *Randolph*, demonstrating that a particular arbitration agreement would effectively deny a consumer a remedy, would allow a court to conclude that invalidating the agreement would not offend the FAA. If we are wrong, then § 2's savings clause is truly a dead letter. See *Concepcion, supra* at 1761-1762 (Breyer, J., dissenting), quoting *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967) ("we have recognized that '[t]o immunize an arbitration agreement from judicial challenge' on grounds applicable to all other contracts 'would be to elevate it over other forms of contract' ").

Dell understandably focuses its argument on *Concepcion*'s admonition that although, in the absence of class proceedings, "small-dollar claims . . . might otherwise slip through the legal system," "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Concepcion, supra* at 1753. Dell argues that this language effectively forecloses the ability of States to refuse to enforce agreements to arbitrate even where such agreements have the effect of completely immunizing a party from private civil liability for wrongdoing. We do not read that statement from *Concepcion* so broadly.

---

[20]The arbitration agreement at issue in *In re Checking Account Overdraft Litig. MDL No. 2036*, 685 F.3d 1269, 1281 (11th Cir. 2012), provided that the claimant would pay all costs of arbitration (for both parties) even if she prevailed in her claim.

A reasonable reading of that statement suggests that it was aimed at the reality, sanctioned in *Concepcion,* that, without class arbitration, the "class action waiver will be exculpatory, because most of these small-value claims will go undetected and unprosecuted." *Cruz* v. *Cingular Wireless LLC,* 648 F.3d 1205, 1214 (11th Cir. 2011) (*Cruz*). While this result is regrettable, and undercuts one of the primary purposes of class action lawsuits, see *Feeney I, supra* at 203, *Concepcion* did not go so far as to say that an arbitration clause may be used as an artifice to create de facto immunity from liability for small claims even where an individual plaintiff recognizes the injury and attempts to bring a claim.

*Concepcion* goes to great length to demonstrate the overall fairness of that agreement and the Court's belief that a consumer could successfully pursue a remedy under the regime it established. See *id.* at 1753. We agree with the Supreme Court of Missouri that "[t]his discussion would be superfluous if the majority intended to establish a rule completely preempting all state law unconscionability defenses." *Brewer* v. *Missouri Title Loans,* 364 S.W.3d 486, 490-491 (Mo.), cert. denied, 133 S. Ct. 191 (2012). This view is further supported by the clear inference that a majority of the Supreme Court did not share the view expressed in Justice Thomas's concurring opinion that only State law contract defenses "concerning the formation of the agreement to arbitrate" survive FAA preemption. *Concepcion, supra* at 1755 (Thomas, J., concurring).

As the United States Court of Appeals for the Ninth Circuit opined in *Coneff* v. *AT&T Corp.,* 673 F.3d 1155, 1159 (9th Cir. 2012), the acknowledgment in *Concepcion* that some small claims may "slip through the legal system"

> "focused on a related but different concern [than nonredressability of injury] — even if the arbitration agreements guaranteed (via fee-shifting provisions) that complaining customers would be made whole with respect to damages and counsel fees, most customers would not bother filing claims because the amounts are too small to be worth the trouble. . . . That is, the concern is not so much that customers have no effective *means* to vindicate their rights, but rather that customers have insufficient *incentive* to do so.

That concern is, of course, a primary policy rationale for class actions . . . . But as the Supreme Court stated in *Concepcion*, such unrelated policy concerns, however worthwhile, cannot undermine the FAA." (Emphases in original.)

Another Federal court elaborated on this reasoning:

"There is a difference, however, between claims that might slip through the cracks because plaintiffs choose not to prosecute them individually, and claims for which a plaintiff seeks redress but is precluded from vindicating her rights. This difference is the difference between the situation faced by the Concepcions and that faced by [the plaintiff]. The terms of the arbitration agreement at issue in *Concepcion* ensured that the Concepcions could bring their claim in arbitration on an individual basis, either representing themselves or with counsel. The fact that a plaintiff in the same situation as the Concepcions might choose not to make a claim for such a small overcharge is not the Court's concern, even if a class-action lawyer might be eager to bring the case on behalf of all similarly situated plaintiffs, but for the class-action waiver. By contrast, the terms of the arbitration agreement and the cost of discovery in [the plaintiff's] case preclude her from redressing alleged [Fair Labor Standards Act] violations."

*Sutherland II, supra* at 537. Finally, a District Court of Appeal of California reached a similar conclusion:

"Put another way, preemption under *Concepcion* occurs if the arbitration process would make a prevailing claimant whole, but the amount in dispute is so small that a claimant does not think it worth the effort to pursue relief; preemption does not occur under *Concepcion* if a claimant lacks the means to pursue a claim in arbitration because the cost of pursuing relief on an individual basis — whether in arbitration or court — exceeds the potential recovery."

*Franco* v. *Arakelian Enters., Inc.*, 211 Cal. App. 4th 314, 370 (2012) (*Franco*).

Although not all courts share the view espoused in *Coneff* v. *AT&T Corp., supra, Sutherland II, supra,* and *Franco, supra,*

even courts that have read *Concepcion* more broadly have acknowledged that "*Concepcion* leaves open the possibility that in some cases, an arbitration agreement may be invalidated on public policy grounds where it effectively prevents the claimant from vindicating her statutory cause of action." *Cruz, supra* at 1215. See *Schnuerle* v. *Insight Communications Co.,* 376 S.W.3d 561, 572-573 (Ky. 2012) (rejecting effort to distinguish *Concepcion* but stating, "[W]e strongly agree with [a]ppellants that *Concepcion* does not disturb the basic principle that an arbitration clause is not enforceable if it fails to provide plaintiffs with an adequate opportunity to vindicate their claims"). Other courts however, particularly the United States Court of Appeals for the Third Circuit, reject even this notion, concluding that *Concepcion* prohibits a court from invalidating a class waiver provision in an arbitration agreement even where every indication points to claims being nonremediable in the absence of class proceedings. See *Quilloin* v. *Tenet HealthSystem Philadelphia, Inc.,* 673 F.3d 221, 232 (3d Cir. 2012), quoting *Thibodeau* v. *Comcast Corp.,* 912 A.2d 874, 883-884 (Pa. Super. Ct. 2006) (FAA prohibits State court from invalidating class waiver as unconscionable even where class waiver "denie[s] every plaintiff a meaningful remedy"); *Homa* v. *American Express Co.,* 494 Fed. Appx. 191, 196 (3d Cir. 2012) ("Even if [the plaintiff] cannot effectively prosecute his claim in an individual arbitration that procedure is his only remedy, illusory or not. . . . Though some persons might regard our result as unfair, [the FAA] requires that we reach it"); *Litman* v. *Cellco Partnership,* 655 F.3d 225, 231 (3d Cir. 2011), cert. denied, 132 S. Ct. 1046 (2012), quoting *Concepcion, supra* at 1753 ("We understand the holding of *Concepcion* to be both broad and clear: a state law that seeks to impose class arbitration despite a contractual agreement for individualized arbitration is inconsistent with, and therefore preempted by, the FAA, irrespective of whether class arbitration 'is desirable for unrelated reasons' "). See also *Cruz, supra* at 1214-1215 (because plaintiffs were challenging AT&T arbitration agreement identical to that at issue in *Concepcion,* "faithful adherence to *Concepcion*" would require court to compel individual arbitration even if plaintiffs could show that agreement effectively precludes remedy).

Although *Concepcion* does not speak in terms of a "means

versus incentive" analysis as set forth in *Coneff* v. *AT&T Corp., supra, Sutherland II, supra,* and *Franco, supra,* the *Discover Bank* rule would have failed because it "classif[ied] most collective-arbitration waivers in consumer contracts as unconscionable" and invalidated them without regard to whether a consumer could viably resolve claims through individual arbitration. See *Concepcion, supra* at 1746, 1753. Accordingly, the theory that a plaintiff can avoid FAA preemption by "showing that the invocation of the arbitration clause in a specific case would be exculpatory or would confer de facto immunity upon the defendant" has gained some traction as courts have endeavored to define the scope of *Concepcion.* See Gilles & Friedman, *supra* at 647-648, 651. The logical next question, then, is under what conditions this criterion will be satisfied.

In *Brewer* v. *Missouri Title Loans,* 364 S.W.3d 486, 494 (Mo.), cert. denied, 133 S. Ct. 191 (2012), the Missouri Supreme Court invalidated a class waiver provision in an arbitration agreement after concluding that "the totality of [the plaintiff's] evidence, including the lack of available counsel, demonstrates that there is no practical, viable means of individualized dispute resolution." The plaintiff in *Brewer* presented, among other evidence, evidence that her claim "would require significant expertise and discovery, and it would not be financially viable for an attorney because of the complicated nature of the case and the small damages at issue." *Id.* at 493-494 (acknowledging "expert testimony from three consumer lawyers who testified it was unlikely that a consumer could retain counsel to pursue individual claims").[21] Similarly, the court in *Franco*[22] held a

---

[21]The *Brewer* court reasoned, and we agree, that although following *Concepcion*

> "the unavailability of counsel is not alone sufficient to invalidate the requirement of individual arbitration, it remains one of the relevant considerations in assessing the overall conscionability [*sic*] of an arbitration contract. . . . In some cases, the availability of counsel is a relevant consideration for determining whether the [FAA's] interest in dispute resolution will be satisfied. . . . [T]he totality of [the plaintiff's] evidence, including the lack of available counsel, demonstrates that there is no practical, viable means of individualized dispute resolution."

*Brewer* v. *Missouri Title Loans, Inc.,* 364 S.W.3d 486, 494 (Mo.), cert. denied, 133 S. Ct. 191 (2012).

[22]See note 12, *supra.*

class waiver provision in an arbitration clause in an employment contract invalid where the plaintiff demonstrated that "it would be highly unlikely that an attorney would represent him on an individual basis in either arbitration or court," and the court concluded that the plaintiff "[could not] pursue relief for violations of his unwaivable statutory rights to rest and meal periods unless his case [could] be brought as a class action." *Id.* at 371-372.[23]

In *Sutherland II, supra,* a court considering an employee's challenge to an individual arbitration clause contained in her employment agreement held:

> "The facts before this Court establish that the Agreement at issue in this case would operate as a waiver of [the employee's] right to pursue her statutory remedies pursuant to the FLSA [and New York State law]. The Court therefore finds the doctrine articulated by the Supreme Court in *Concepcion* inapplicable to the different facts [the employee] faces."

*Id.* at 538. In a prior opinion in the same case, the court had credited the employee's "uncontested submission" estimating that she "would be required to spend approximately $200,000 in order to recover double her overtime loss of approximately $1,867.02," and noted that "rather than prosecuting her low-value, high-cost claim on an individual basis, [the employee] would give up any rights she might have to recover overtime payments allegedly owed to her." *Sutherland* v. *Ernst & Young LLP,* 768 F. Supp. 2d 547, 551-552 (S.D.N.Y. 2011) (*Sutherland I*).

---

[23]Although we cite *Franco* v. *Arakelian Enters., Inc.,* 211 Cal. App. 4th 314 (2012), for the principle that an individualized demonstration of nonredressability survives *Concepcion,* we do not necessarily agree with *Franco*'s application of this principle to the facts of that case. The arbitration agreement in *Franco* provided that in lieu of individual arbitration, either party could pursue a claim in small claims court subject to that court's $10,000 jurisdictional limit on damages. *Id.* at 327. The court reasoned that the ability to sue in small claims court did not protect the plaintiff because his potential recovery, which totaled $10,250, exceeded the small claims court's jurisdictional limit, *id.* at 328 n.1, while at the same time concluding that the plaintiff's claim was too small to be viably prosecuted on an individual basis. See *id.* at 371.

Similarly, in *Amex III*, *supra*, the third instalment in the "Amex trilogy," the United States Court of Appeals for the Second Circuit held that because a class waiver provision in an arbitration agreement between American Express and businesses that accept American Express cards entirely "preclude[d] plaintiffs from enforcing their statutory rights [to bring antitrust claims under the Sherman Act], . . . the arbitration provision [was] unenforceable." *Id.* at 218. The court reached that conclusion relying on expert testimony and other "evidence before [it that] establishe[d], as a matter of law, that the cost of plaintiffs' individually arbitrating their dispute with Amex would be prohibitive, effectively depriving plaintiffs of the statutory protections of the antitrust laws." *In re Am. Express Merchants' Litig.*, 634 F.3d 187, 197-198 (2d Cir. 2011) (*Amex II*) (adhered to on rehearing in light of *Concepcion* by *Amex III*). According to the court in *Amex III*, *supra* at 214, "What *Stolt-Nielsen* and *Concepcion* do not do is require that all class-action waivers be deemed per se enforceable."

6. *The continued viability of* Feeney I. There is no disputing that *Concepcion* represents a watershed moment in FAA jurisprudence, or that it casts doubt on the continued viability of *Feeney I* as it was written. However, as we have discussed, *Concepcion* did not completely foreclose the ability of courts to invalidate a class waiver provision where the plaintiff can demonstrate that he or she lacks the ability to pursue a claim against the defendant in individual arbitration according to the terms of the agreement, or put differently, where the class waiver provision has conferred on the defendant de facto immunity from private civil liability for violations of State law.

As an initial matter, in rendering our decision in *Feeney I*, we rejected the notion that a prohibition on class proceedings is "inherent" in an agreement to arbitrate. See *Feeney I*, *supra* at 205 ("Moreover, a majority of the Justices of the United States Supreme Court has, at least implicitly, indorsed class arbitrations as consistent with the FAA"). That assumption has proved incorrect. Critical to the Court's holding in *Concepcion* is its belief that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Concepcion*, *supra*

at 1748. In denouncing classwide arbitration and declaring it "inconsistent with the FAA," the Supreme Court was building on its decision in *Stolt-Nielsen*, which held that class arbitration may not be compelled where an arbitration agreement does not contemplate it, because the " 'changes brought about by the shift from bilateral arbitration to class-action arbitration' are 'fundamental.' " *Concepcion, supra* at 1750, quoting *Stolt-Nielsen, supra* at 1776. Put simply, in the Court's view, class arbitration "is not arbitration as envisioned by the FAA, lacks its benefits, and therefore may not be required by state law." *Concepcion, supra* at 1753.

Other than as to its indorsement of class arbitration, *Concepcion* abrogates *Feeney I* only insofar as *Feeney I* held that a prohibition on class actions in a consumer contract will not be enforced "where to do so would in effect sanction a waiver of the right to proceed in a class action under G. L. c. 93A." *Feeney I, supra* at 205. It is clear, in light of *Concepcion*, that the FAA preempts a State rule that mandates class proceedings, even where one of the rights being vindicated *is* the State statutory right to a class proceeding, such as the right set forth in G. L. c. 93A. See *Concepcion, supra* at 1753; *Perry* v. *Thomas*, 482 U.S. 483 (1987); *Southland Corp.* v. *Keating*, 465 U.S. 1, 10 (1984); Emilio *vs.* Sprint Spectrum L.P., U.S. Dist. Ct., No. 11 Civ. 3041(BSJ) (S.D.N.Y. Mar. 16, 2012), rev'd in part on other grounds, U.S. Ct. App., No. 12-1223-CV (2d Cir. Jan. 18, 2013) ("To the extent that . . . the [Kansas Consumer Protection Act (KCPA)] creates a non-waiveable right to bring a class action in certain consumer contexts, [*Concepcion*] dictates that the KCPA is preempted by the FAA"). Essentially, because the FAA prohibits a State from requiring a judicial forum for a particular type of dispute, *Concepcion, supra*; *Marmet Health Care Ctr., Inc.* v. *Brown*, 132 S. Ct. 1201, 1203-1204 (2012) (per curiam), and because *Stolt-Nielsen* prohibits a court from compelling nonconsensual class arbitration, any State law rule guaranteeing class proceedings effectively guarantees a judicial forum, and is preempted by the FAA.

However, where a court determines, following an individualized factual inquiry, that class proceedings are the only viable way for a consumer plaintiff to bring a claim against a defend-

ant, as may be the case where the claims are complex, the damages are demonstrably small and the arbitration agreement does not feature the safeguards found in the *Concepcion* agreement, a court may still invalidate a class waiver. In such circumstances, a class waiver may be declared invalid pursuant to the FAA's savings clause not because the clause violates a public policy favoring class actions (e.g., G. L. c. 93A), but because it violates the public policy against agreements that immunize business defendants from private civil liability for consumer injuries. As we said in *Feeney I*, "Corporations should not be permitted to use class action waivers as a means to exculpate themselves from liability for small-value claims." *Id.* at 203, quoting *Dale v. Comcast Corp.*, 498 F.3d 1216, 1224 (11th Cir. 2007). That statement remains as true today as it was then. As the Supreme Court stated in *Mitsubishi Motors, supra* at 637 n.19, "in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy." Even though Federal statutory rights were at stake in *Mitsubishi Motors*, and thus the Court was not speaking in terms of preemption, there is no principled reason to conclude that Congress in enacting the FAA had even the remote intention to prevent a State court from invalidating such an egregiously exculpatory agreement in an adhesive consumer contract merely because it took the form of an arbitration agreement.[24] The FAA does not confer on businesses carte blanche immunity from private civil

---

[24]We do not dispute that, in light of *Concepcion* and other Supreme Court precedent, businesses may permissibly use arbitration clauses as a means to *limit* liability in certain respects. It is not lost on this court that in the wake of *Concepcion*, the deterrent effect of consumer class actions has greatly diminished. See *Feeney I, supra* at 203. See also Gilles & Friedman, After Class: Aggregate Litigation in the Wake of *AT&T Mobility* v. *Concepcion*, 79 U. Chi. L. Rev. 623, 643-644 & n.92 (2012) (Gilles & Friedman) ("Moreover, the pool of cases that will pass the prohibitive expense test is set to shrink, post-*Concepcion*. We can expect that corporate counsel seeking to cut off such challenges will use the bounty clause in *Concepcion* as a model"). This is so because *Concepcion* makes clear that so long as an individual plaintiff who seeks to bring a claim can viably do so in individual arbitration, a court may not compel class proceedings even if most potential plaintiffs "might choose not to make [an individual] claim for such a small overcharge," *Sutherland* v. *Ernst & Young LLP*, 847 F. Supp. 2d 528, 537 (S.D.N.Y. 2012), and "without

liability for violations of State law, and accordingly, State law efforts aimed at prohibiting such complete immunity are not preempted by the FAA simply because an arbitration agreement is involved. The FAA may be a powerful tool for consumer businesses, but it is not a trump card.

Of course, a plaintiff must prove that a class waiver provision effectively prohibits him from bringing a claim against the defendant. As it did in *Feeney I,* Dell argues that the plaintiffs "have not made a sufficient showing that the class action mechanism is necessary for them to obtain relief for their statutory rights under G. L. c. 93A." *Id.* at 203. On this point, we said in *Feeney I, supra* at 204:

> "The claimed damages here are small (Feeney claims damages of $13.65, and Dedham Health claims damages of $215.55), and we need not engage 'in an exhaustive analysis' to determine that the costs of bringing such claims are 'prohibitive.' *Fiser* v. *Dell Computer Corp.,* 144 N.M. 464, 469 (2008). It is sufficient that the plaintiffs' claims are of a class of disputes that 'predictably involve small amounts of damages.' *Discover Bank* v. *Superior Court,* 36 Cal. 4th 148, 162 (2005)."

We continued in a footnote: "It is therefore not dispositive whether, as the defendants claim, the plaintiffs did not present the motion judge in the Superior Court with proof that their claims were not individually viable." *Id.* at 204 n.29.

It is clear that following *Concepcion*'s repudiation of the *Discover Bank* rule, it is decidedly *not* sufficient that the "plaintiff's claims are of a class of disputes that 'predictably involve small amounts of damages.' " *Feeney I, supra* at 204, quoting *Discover Bank, supra* at 162. See *Concepcion, supra* at 1746, 1750. Nor was our statement correct in *Feeney I, supra* at 204 n.29, that it was not "dispositive" whether the plaintiffs presented proof that their claims were not individually viable. Even prior to *Concepcion,* it appeared relatively clear that the party seeking to avoid arbitration bore the burden of proving that his or her claims are nonarbitrable. See *Randolph, supra* at 90-92

---

the availability of a class-action mechanism, many consumer-fraud victims may never realize that they may have been wronged." *Muhammad* v. *County Bank,* 189 N.J. 1, 20 (2006).

(party that "seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive" bears burden of "showing the likelihood of incurring such costs").[25] In cases where the prohibitive expense and nonredressability come as a result of a class waiver, *Concepcion* suggests that a plaintiff can only succeed in avoiding that class waiver where he or she can prove as a matter of fact that the class waiver provision (in conjunction with the other terms of the agreement) effectively prohibits him or her from pursuing a claim.

We thus must determine whether the plaintiffs here have met the burden on remand of proving that, on the facts of this case, the arbitration agreement and class waiver provision contained in Dell's terms of service render their claims nonremediable. The judge in the Superior Court who denied Dell's renewed motion to compel individual arbitration in light of *Concepcion* apparently placed the burden on Dell to demonstrate that the FAA preempted the order denying its motion to compel individual arbitration that we affirmed in *Feeney I*. While it may be correct that a party claiming preemption generally bears the burden of proving preemption, see *Roberts* v. *Southwestern Bell Mobile Sys., Inc.*, 429 Mass. 478, 491 (1999), and cases cited, it is equally clear that a party seeking to avoid an arbitration agreement must prove that his claims are nonarbitrable. See *Randolph, supra* at 90-92, citing *Gilmer, supra* at 26; *Shearson/American Express Inc.* v. *McMahon*, 482 U.S. 220, 227 (1987) ("We have held that the party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue"). Particularly in light of the foregoing discussion, it is clear that agreements to arbitrate falling within the scope of the FAA are presumptively enforceable.

---

[25]Although generally addressing the vindication of Federal statutory rights, a principle not directly applicable here, "[c]ourts uniformly recognize plaintiffs' burden is to 'demonstrate that potential costs are great enough to deter them and similarly situated individuals from seeking to vindicate their federal statutory rights.' " Gilles & Friedman, *supra* at 645 n.102, quoting *Spinetti* v. *Service Corp. Int'l*, 324 F.3d 212, 217 (3d Cir. 2003). See *Kristian* v. *Comcast Corp.*, 446 F.3d 25, 52 (1st Cir. 2006); *Musnick* v. *King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1259 1260 (11th Cir 2003); *Bradford* v. *Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 (4th Cir. 2001); *Delta Funding Corp.* v. *Harris*, 189 N.J. 28, 42-44 (2006).

Nevertheless, we are entitled to conclude on appeal that the motion judge was "right for the wrong reason," *Aetna Cas. & Sur. Co.* v. *Continental Cas Co.*, 413 Mass. 730, 734-735 (1992), and "we may consider any ground apparent on the record that supports the result reached in the lower court." *Gabbidon* v. *King*, 414 Mass. 685, 686 (1993), and cases cited. As the motion judge explained at some length, the record contains more than adequate support for the conclusion that the arbitration agreement in this case confers on Dell de facto immunity from private civil liability for violations of State law, and that the plaintiffs' claims are nonremediable in individual arbitration pursuant to the terms of the agreement. In the words of the motion judge:

> "[Dell's] arbitration agreement stands in stark contrast to the AT&T agreement in *Concepcion*, which had so many pro-consumer incentives that an individual consumer might be better off in arbitration than in class litigation. The Dell Arbitration Clause provides no incentives and simply requires arbitration of all disputes, even those that could not possibly justify the expense in light of the amount in controversy. Dell itself acknowledged that, 'it is doubtful that the plaintiffs will pursue the suit if the denial of class action status is sustained on appeal.' Here, based upon facts — not unsupported hypothesis — there is no realistic individual claim arbitration process that the FAA could promote. The Dell Arbitration Clause serves only as an effective prohibition upon class actions involving individual claims in the tens or hundreds of dollars. The facts here differ markedly from those in *Concepcion*." (Citations omitted.)[26]

The voluminous record in this case speaks to the complex nature of the claims involved. Unlike the plaintiffs in *Concepcion*, who made relatively straightforward claims of false advertising and fraud stemming from the collection of sales tax on telephones advertised as "free," *Concepcion, supra* at 1744, in order to prevail on the merits, the plaintiffs here must prove

---

[26]In addition, and unlike the arbitration clause in *Concepcion*, Dell's arbitration clause did not permit a consumer to bring qualifying claims in small claims court in lieu of arbitration.

that Dell was collecting a facially valid tax from the consumer as part of an improper scheme to shift the burden on repair parts from Dell to the consumer, thus increasing the profits on the optional service contracts. See *Feeney I, supra* at 213-214. The underlying merit of these claims has been hotly contested over the decade since this litigation began, and their prosecution understandably requires advanced knowledge of the tax codes. That reality, in conjunction with the nominal claimed damages and the absence of any mandatory fee-shifting or bounty provisions, persuades us to conclude that the plaintiffs have met their burden of demonstrating that they cannot pursue their claims in individual arbitration. Compare *Amex III, supra* at 218, quoting *In re American Express Merchant's Litig.*, 554 F.3d 300, 319 (2d Cir. 2009) ("We again find 'Amex has brought no serious challenge to the plaintiffs' demonstration that their claims cannot reasonably be pursued as individual actions, whether in federal court or in arbitration' "), and *Sutherland II, supra* at 536 ("In contrast to the facts in *Concepcion,* [the plaintiff] has demonstrated that she would not be able to obtain representation or vindicate her rights on an individual basis"), and *Brewer, supra* at 494 ("A claim such as [the plaintiff's] would require significant expertise and discovery, and it would not be financially viable for an attorney because of the complicated nature of the case and small damages at issue"), with *Concepcion, supra* at 1753 ("Moreover, the claim here was most unlikely to go unresolved. . . . Indeed, the District Court concluded that the Concepcions were *better off* under their arbitration agreement with AT&T than they would have been as participants in a class action . . ." [emphasis in original]).

Finally, we disagree with the notion that because *Stolt-Nielsen* prohibits a court from compelling class arbitration where the agreement does not contemplate its availability, a court is powerless to fashion an order that allows for class *litigation* in the limited circumstances outlined in this opinion. See *Homa* v. *American Express Co.*, 494 Fed. Appx. 191, 197 (3d Cir. 2012), quoting *Concepcion, supra* at 1748 (such a result would be "absolutely inconsistent" with FAA); *Cruz, supra* at 1213 ("It would be anomalous indeed if the FAA — which promotes arbitration — were offended by imposing upon arbitration non-

consensual procedures that interfere with arbitration's fundamental attributes, but not offended by the nonconsensual elimination of arbitration altogether"). An arbitral forum may be ill suited to class proceedings, but a judicial forum is not. It is hardly unreasonable to force nonconsensual class litigation on a business defendant where the need for that nonconsensual class litigation stems directly from the defendant's attempt at absolving itself from liability by promulgating an unconscionable, exculpatory arbitration agreement that denies the right to proceed on a class basis while at the same time providing none of the mitigating features found in the *Concepcion* agreement. A doctrine that denies enforcement of an agreement to arbitrate in such limited circumstances does not "stand[] as an obstacle to the accomplishment of the full purposes and objectives of Congress" in enacting the FAA. *Concepcion, supra* at 1753. Accordingly, we invalidate the arbitration agreement entirely. See *Amex III, supra* at 219; *Sutherland I, supra* at 554; *Brewer, supra* at 496.

7. *Conclusion.* For the reasons stated, we affirm the decision of the Superior Court denying Dell's renewed motion to confirm the arbitration award. We remand the case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.**

---

*Subsequent to the release of the slip opinion in this case, the court stayed the issuance of the rescript. See rescript opinion, 466 Mass. 1001 (2013). — Reporter.