**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JENNIFER L. LASTER; ANDREW
THOMPSON; ELIZABETH VOORHIES,
on behalf of themselves and all
others similarly situated and on
behalf of the general public,
                    *Plaintiffs,*

        and

VINCENT CONCEPCION; LIZA
CONCEPCION,
          *Plaintiffs-Appellees,*

        v.

AT&T MOBILITY LLC,
          *Defendant-Appellant.*

No. 08-56394

D.C. No.
3:05-cv-01167-
DMS-AJB

OPINION

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted
September 17, 2009—San Francisco, California

Filed October 27, 2009

Before: Mary M. Schroeder, Stephen Reinhardt and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

14387

---

**COUNSEL**

Donald M. Falk, Mayer Brown LLP, Palo Alto, California, for the defendant-appellant.

Kirk B. Hulett, Hullet Harper Stewart LLP, San Diego, California, for the plaintiffs-appellees.

---

**OPINION**

BEA, Circuit Judge:

This case involves a class action claim that a telephone company's offer of a "free" phone to anyone who signs up for its service is fraudulent to the extent the phone company charges the new subscriber sales tax on the retail value of each "free" phone.

The phone company demanded the plaintiffs' claims be submitted to individual arbitration, pointing to the arbitration clause of the written agreement, which arbitration clause requires arbitration, but bars class actions. Because this is an action invoking diversity of citizenship jurisdiction, the plaintiff-subscribers point to California contract law, which they claim renders both the arbitration clause and the class action waiver unconscionable, hence, unenforceable.

At first blush, it seems we decided the invalidity of an arbitration agreement banning class actions in *Shroyer v. New*

*Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007). But, the phone company points to a new wrinkle: unlike the arbitration clause in *Shroyer*, this arbitration clause provides for a "premium" payment of $7,500 (the jurisdictional limit of California's small claims court) if the arbitrator awards the customer an amount greater than the phone company's last written settlement offer made before selection of an arbitrator. Hence, says the phone company, the arbitration clause is not an artifice that has the practical effect of rendering it immune from individual claims.

We will find, on second blush, the new "premium" payment does not distinguish this case from *Shroyer*, and that under California law, the present arbitration clause is unconscionable and unenforceable. Further, we will also find no merit to the phone company's claim the Federal Arbitration Act (FAA) preempts California unconscionability law.

Thus, we will affirm the district court's order.

## I.   Factual and Procedural History

In February 2002, Vincent and Liza Concepcion signed a Wireless Service Agreement (WSA) with AT&T Mobility[1] (AT&T) for cellular phone service and the purchase of new cell phones. The Concepcions received the cell phones without charge for the devices themselves because they agreed to a two-year contract term. However, AT&T charged them $30.22 total in sales tax for the two phones[2], calculated as

---

[1]The original contract was with Cingular Wireless. In November of 2005, AT&T acquired Cingular Wireless and renamed the company AT&T Mobility (AT&T) on January 8, 2007.

[2]The Concepcions allege they were actually charged $149.99 for a Motorola phone, and $0.00 for a Nokia phone. If so, at a sales tax rate of 7.75%, the amount of sales tax charged on the "free" Nokia phone is but $18.60. For purposes of the present appeal, the disparity in their pleadings is inconsequential. If anything, it makes the predictable recovery in an individual claim smaller and more likely to have the practical effect of making the arbitration clause unconscionable.

7.75% of both phones' full retail value. The Concepcions continued to renew their WSA through the filing of this lawsuit.

The WSA included both an arbitration clause, which required any disputes to be submitted to arbitration, and a class action waiver clause, which required any dispute between the parties to be brought in an individual capacity. In December 2006, AT&T revised the arbitration agreement to add a new premium payment clause. Under this clause, AT&T will pay a customer $7,500[3] if the arbitrator issues an award in favor of a California customer that is greater than AT&T's last written settlement offer made before the arbitrator was selected.

On March 27, 2006, before the premium payment clause was added, the Concepcions filed a complaint in the United States District Court for the Southern District of California. The Concepcions alleged the practice of charging sales tax on a cell phone advertised as "free" was fraudulent. In September 2006, the district court consolidated the Concepcions' case with the *Laster* case, a putative class action addressing the same issues. In March 2008, after the premium payment clause was added, AT&T filed a motion to compel the Concepcion plaintiffs to submit their claims to individual arbitration under the revised arbitration agreement. The district court denied the motion. It held that the class waiver provision of the arbitration agreement is unconscionable under California law and that California unconscionability law is not preempted by the Federal Arbitration Act. AT&T timely appealed.

---

[3]The agreement specifically provides for a premium payment in the amount of "the maximum claim that may be brought in small claims court in the county of your billing address." In California, the maximum claim is $7,500. Cal. Code Civ. Proc. § 116.221.

## II.   Jurisdiction and Standard of Review

This is an interlocutory appeal from the denial of a motion to compel arbitration. We have jurisdiction under 9 U.S.C. § 16(a)(1)(B). We review the denial of a motion to compel arbitration de novo. *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976, 981 (9th Cir. 2007).

## III.   Discussion

### A.   AT&T's class action waiver is unconscionable under California law.

[1] The district court did not err when it held AT&T's class action waiver was unconscionable under California law, and thus unenforceable. Under the Federal Arbitration Act, arbitration agreements "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "It is well-established that unconscionability is a generally applicable contract defense, which may render an arbitration provision unenforceable." *Shroyer*, 498 F.3d at 981 (internal citations omitted).

[2] To be unenforceable under California law, a contract provision must be both procedurally and substantively unconscionable. *Id.* at 981. Procedural unconscionability generally takes the form of a contract of adhesion, that is, a contract drafted by the party of superior bargaining strength and imposed on the other, without the opportunity to negotiate the terms. *Id* at 982. Substantive unconscionability focuses on overly harsh or one-sided contract terms. *Id.* Both elements of unconscionability need not be present to the same degree; California courts use a sliding-scale: the more substantively unconscionable the contract term, the less procedurally unconscionable it need be to be unenforceable and vice versa. *Id.* at 981-82.

**[3]** The California Supreme Court addressed the unconscionability of class action waivers in arbitration agreements for the first time in *Discover Bank v. Sup. Ct.*, 113 P.3d 1100 (Cal. 2005), holding that class action waivers were at least sometimes unconscionable under California law. 113 P.3d at 1108. Class actions, the court reasoned, serve the important policy function of deterring and redressing wrongdoing, particularly where a company defrauds large numbers of consumers out of individually small sums of money.[4] *Id.* at 1105. Class action waivers pose a problem because, "small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Id.* at 1106. In this way, the class action waiver allows the company to insulate itself from liability for its wrongdoing and the policy behind class actions is thwarted. *Id.* at 1109. With this in mind, the *Discover Bank* court held:

> when the [class] waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least . . . the waiver becomes in practice the exemption of the party from responsibility for its own fraud, or willful injury to the person or property of another. Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

---

[4]As the California Supreme Court has emphasized, "Some courts have viewed class actions or arbitrations as a merely procedural right, the waiver of which is not unconscionable. . . . But as [the cases] of this court have continually affirmed, class actions and arbitrations are, particularly in the consumer context, often inextricably linked to the vindication of substantive rights." *Discover Bank*, 113 P.3d at 1109.

*Id.* at 1110 (internal quotations omitted). The reasoning behind this rule is pretty easy to grasp. As we explained in *Shroyer*: "when the potential for individual *gain* is small, very few plaintiffs, if any, will pursue individual arbitration or litigation, which greatly reduces the aggregate liability a company faces when it has exacted small sums from millions of consumers." 498 F.3d at 986.

**[4]** We have interpreted *Discover Bank* as creating a three-part test to determine whether a class action waiver in a consumer contract is unconscionable: (1) is the agreement a contract of adhesion; (2) are disputes between the contracting parties likely to involve small amounts of damages; and (3) is it alleged that the party with superior bargaining power has carried out a scheme deliberately to cheat large numbers of consumers out of individually small sums of money. *Id.* at 983. In *Shroyer*, we noted that "there are most certainly circumstances in which a class action waiver is unconscionable under California law despite the fact that all three parts of the *Discover Bank* test are not satisfied." *Id*. Because we hold that the class action waiver at issue satisfies all three parts of the test, as was true in *Shroyer*, "it is unnecessary to explore those circumstances here." *Id*.

### 1. AT&T's class action waiver is unconscionable under the three-part *Discover Bank* test.

### a. AT&T's WSA is a contract of adhesion.

**[5]** As we noted in *Shroyer*, a contract of adhesion under California law is a standardized contract imposed on the subscribing party without an opportunity to negotiate the terms. *Id.* The Concepcions were given the standardized WSA without the opportunity to negotiate the terms. Thus, under California law, it is a contract of adhesion.

### b. The dispute involves predictably small amounts of damages.

[6] In both *Shroyer* and *Discover Bank* the damages at issue were found to be "predictably small." The plaintiffs in *Shroyer* sued under cell phone contracts, claiming damages in the "hundreds of dollars" range based on the cost of obtaining new cell phone service with other companies. 498 F.3d at 984. In *Discover Bank*, the plaintiff sought to recover a $29 fee charged for late credit card payments that were claimed not to be late. 113 P.3d at 1104. Each court determined that these amounts were small enough to satisfy the second prong of the *Discover Bank* test. *See Shroyer*, 498 F.3d at 984; *Discover Bank*, 113 P.3d at 1110. Here, the damages are $30.22[5] for the sales tax charged on cell phones AT&T advertised were "free." This is comparable to the amount of damages in *Discover Bank*, and well below the hundreds of dollars found predictably small in *Shroyer*.

### c. The Concepcions alleged AT&T carried out a scheme deliberately to cheat large numbers of consumers out of small sums of money.

[7] The Concepcions alleged in their complaint that AT&T was fraudulently advertising the phones were free, all the while knowing AT&T would charge consumers sales tax on such phones. This is sufficient to satisfy the third-prong of *Discover Bank*. *See id.* at 984.

### d. Conclusion

[8] Because all three prongs of the *Discover Bank* test are met, AT&T's class action waiver is unconscionable under California law.

---

[5]Or $18.60, *see supra* note 2.

### 2. AT&T's premium payment provision does not negate the unconscionability of the class action waiver under California law.

[9] AT&T contends the premium payment provision of its revised arbitration agreement[6] prevents the class action waiver from being substantively unconscionable. AT&T reasons that the potential for the premium payment overcomes the problem of predictably small damages identified in *Discover Bank* and *Shroyer*. AT&T submits an award of $7,500 should provide individual customers an adequate incentive to pursue initially small damage claims with higher potential, against the company. AT&T contends that this incentive-laden scheme actually punishes it should it make low-ball offers in settlement, and it removes any claim of immunity from lability for its allegedly fraudulent conduct; therefore *this* class waiver is not unconscionable. However, this is incorrect. The *Discover Bank* rule focuses on whether damages are predictably small, and in the end, the premium payment provision does not transform a $30.22 case into a predictable $7,500 case.

[10] The $7,500 premium payment is available only if AT&T does not make a settlement offer to the aggrieved customer in a sum equal to or higher than is ultimately awarded in arbitration, and before an arbitrator is selected. This means that if a customer files for arbitration[7] against AT&T, predict-

---

[6]The provision provides for a contractual payment of $7,500 if a customer receives an arbitration award greater than the amount of AT&T's last written settlement offer, made before an arbitrator was chosen.

[7]AT&T puts much stock in the argument that, while a customer might not be bothered to arbitrate or litigate small damage claims, a customer would be willing to pursue a small damage claim through AT&T's informal claims process. However, were this the case it would not affect the outcome. We must determine only whether the premium provides adequate incentive to pursue individual *arbitration*, not informal resolution. *See Discover Bank*, 113 P.3d at 1110 ("[n]or do we agree . . . that small claims litigation, government prosecution, or *informal resolution* are adequate substitutes [for the class action mechanism].") (emphasis added).

ably, AT&T will simply pay the face value of the claim before the selection of an arbitrator to avoid potentially paying $7,500. Thus, the maximum gain to a customer for the hassle of arbitrating a $30.22 dispute is still just $30.22.[8] We held in *Shroyer* that a claim worth a few hundred dollars did not provide adequate incentive for a customer to bother pursuing individual arbitration. 498 F.3d at 986. The $30.22 at issue here is even less of an incentive to file a claim. As a result, aggrieved customers will predictably not file claims—even if the odds are that after the letter-writing and arbitrator-choosing, they will get a $30.22 offer—thereby "greatly reduc[ing] the aggregate liability" AT&T faces for allegedly mulcting small sums of money from many consumers. *See id*. The premium payment provision has no effect on this conclusion,[9] nor do any of the other provisions of AT&T's revised arbitration clause.[10] The actual damages a customer will recover remain predictably small, thus under the rationale of

---

[8]The problem with small damage claims is not that the monetary cost of arbitrating is greater than the potential recovery, but that a person normally will not find it worth the time or the hassle to try to recover such a small amount, even if that person spends no money to hire an attorney or to invoke the arbitration process. *See Shroyer*, 498 F.3d at 986.

[9]The provision does essentially guarantee that the company will make any aggrieved customer whole who files a claim. Although this is, in and of itself, a good thing, the problem with it under California law—as we read that law—is that not every aggrieved customer will file a claim.

[10]In addition to the $7,500 premium payment, the revised arbitration agreement also provides: double attorney's fees in the event the arbitrator awards the customer more than AT&T's last written settlement offer before the arbitrator was selected; AT&T will pay all arbitration costs and fees unless the arbitrator determines that the claim was frivolous or brought for an improper purpose; AT&T will not seek attorney's fees if it prevails; either party may bring a claim in small claims court; the arbitration is not confidential; full court remedies, including punitive damages and injunctions, are available; arbitration will be conducted pursuant to AAA's Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer-Related Disputes, the arbitration will take place in the county of the customer's billing address, and that the customer can choose between an in-person, telephonic, or no hearing at all for claims of less than $10,000.

*Discover Bank* and *Shroyer*, AT&T's class action waiver is in effect an exculpatory clause, hence substantively unconscionable.

### B. The Federal Arbitration Act does not preempt California unconscionability law.

The Federal Arbitration Act does not expressly or impliedly preempt California law governing the unconscionability of class action waivers in consumer contracts of adhesion. The FAA "does not bar federal or state courts from applying generally applicable state contract law principles and refusing to enforce an unconscionable class action waiver in an arbitration clause." *Shroyer*, 498 F.3d at 987. *Shroyer* controls this case because AT&T makes the same arguments we rejected there.

#### 1. The FAA does not expressly preempt California law.

[11] The FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Therefore, if a state-law ground to revoke an arbitration clause is not also applicable as a defense to revoke a contract in general, that state-law principle is preempted by the FAA. *Shroyer*, 498 F.3d at 987. However, "because unconscionability is a generally applicable contract defense, it may be applied to invalidate an arbitration agreement without contravening § 2 of the FAA" *Id.* at 988 (internal quotations omitted).

AT&T contends the *Discover Bank* rule abandons the sliding-scale approach of California general unconscionability law and is therefore a "new rule" applicable only to arbitration agreements. This contention is incorrect. As we explained in *Shroyer*, "[t]he rule announced in *Discover Bank* is simply a refinement of the unconscionability analysis applicable to

contracts generally in California." 498 F.3d at 987. Essentially, the *Discover Bank* test applies the general sliding-scale approach to unconscionability in the specific context of class action waivers. The best way to read *Discover Bank* in light of the sliding-scale approach is that, if a contract clause is, in practice, exculpatory, as long as there is any degree of procedural unconscionability, the element of substantive unconscionability is generally adequate, as a matter of law. *See Discover Bank*, 113 P.3d at 1109 (holding that exculpatory clauses are substantively unconscionable, and when contained in procedurally unconscionable adhesive contracts, "generally unconscionable").

**[12]** Moreover, in *Shroyer*, we already rejected the argument that *Discover Bank* subjects "arbitration clauses to special scrutiny." *Id.* at 987. AT&T is making the same preemption arguments already rejected in *Shroyer*. As a panel, we are bound by a prior panel's determination of law. *General Const. Co. v. Castro*, 401 F.3d 963, 975 (9th Cir. 2005). *Shroyer* controls, therefore California law is not expressly preempted by the FAA.

## 2. The FAA does not impliedly preempt California law.

**[13]** Neither does the FAA impliedly preempt California unconscionability law. A state law is impliedly preempted where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Shroyer*, 498 F.3d at 988. Determining whether California's unconscionability principles stand as an obstacle to the FAA first requires identification of the purposes and objectives underlying the federal Act. *Id.* at 988-89. In *Shroyer*, we identified two purposes: first, to reverse judicial hostility to arbitration agreements by placing them on the same footing as any other contract, and second, to promote the efficient and expeditious resolution of claims. *Id.* at 989.

**[14]** In *Shroyer*, we held that California unconscionability law did not stand in the way of either of these identified purposes. *Id*. at 989-91. As to "reversing hostility to arbitration and placing arbitration agreements on the *same footing* as ordinary contracts," this is not "frustrated or undermined in any way by a holding that class arbitration waivers in contracts of adhesion, like class action waivers in such contracts are unconscionable." *Id.* at 990. Rather, "*Discover Bank* placed arbitration agreements with class action waivers on the *exact same footing* as contracts that bar class action litigation outside the context of arbitration." *Id.* We further explained, "the fact that § 2 expressly permits a court to decline enforcement of an arbitration agreement on grounds . . . such as unconscionability, strongly suggests that Congress did not contemplate that implied preemption principles would be applied to mandate the opposite result." *Id.* at 989-90.

As to the second purpose identified, we rejected the "contention that class proceedings will reduce the efficiency and expeditiousness of arbitration in general." *Id.* at 990. For these reasons, we held that "applying California's generally applicable contract law to refuse enforcement of the unconscionable class action waiver in this case does not stand as an obstacle to the purposes or objectives of the Federal Arbitration Act, and is, therefore, not impliedly preempted." *Id.* at 993.

Here, AT&T makes the same arguments regarding conflict preemption that we rejected in *Shroyer*. *Compare* Opening Br. at 51-53 (arguing that class proceedings would hinder a speedy resolution, place extra burdens on the arbitral process, and lead to companies abandoning arbitration altogether) *with Shroyer*, 498 F.3d at 989 (noting that appellant argued class proceedings would hinder the "speed, simplicity, cost savings, informality, and reduced adversariality" of arbitration and lead to companies abandoning arbitration). AT&T even admits the court in *Shroyer* "rejected a similar argument." Opening Br. at 49. However, AT&T attempts to distinguish

this case from *Shroyer* by contending that a recent Supreme Court case, *Preston v. Ferrer*, 128 S. Ct. 978 (2008), supercedes *Shroyer*'s reasoning on this point.

Preston, an attorney, performed services for Ferrer regarding Ferrer's role as "Judge Alex" on a Fox television network program. 128 S. Ct. at 982. Preston filed an arbitration demand seeking fees allegedly owed him by Ferrer under their contract. *Id.* Ferrer responded by petitioning the California Labor Commissioner to declare the entire contract invalid under the California Talent Agencies Act (TAA). *Id.* Ferrer contended that Preston was acting as a talent agent without the license required by the TAA, thus rendering their entire contract void. *Id.*

[15] Preston responded by filing a motion to compel arbitration. *Id.* The trial court denied the motion to compel arbitration, and the denial was affirmed on appeal, on the ground the TAA vested primary exclusive jurisdiction in the California Labor Commissioner to determine who was or was not a talent agent. *Id.* The U.S. Supreme Court granted certiorari and reversed, noting that *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) "largely, if not entirely, resolves the dispute before us." *Id.* at 984. According to the Court in *Preston*, *Buckeye* held that when parties agree to arbitrate all disputes arising under their contract, questions concerning the validity of the entire contract are to be resolved by the arbitrator in the first instance, not a federal or state court. *Id.* at 981. Thus, in *Preston*, the Supreme Court held that because Ferrer's allegation that Preston was acting as an unlicensed talent agent was a challenge to the validity of the contract as a whole, as opposed to the validity of the arbitration clause itself, the TAA's attempt to lodge primary jurisdiction in another forum was superceded by the FAA. *Id.* at 984, 987. The Court expressly recognized, however, that attacks on the validity of the entire contract are distinct from attacks aimed solely at the arbitration clause. *Id.* at 984. Thus, by its terms, *Preston* is inapplicable to our case because the Concepcions

are not challenging the validity of the service contract with AT&T as a whole, but only the validity of the arbitration agreement. Likewise, nothing in *Preston* undercuts the rationale of *Shroyer* that the FAA does not impliedly preempt California unconscionability law, because the plaintiffs in *Shroyer* were also challenging only the validity of the arbitration agreement. Because *Shroyer* still controls, California unconscionability law is not impliedly preempted by the FAA.

## IV.    Conclusion

We affirm the district court's denial of AT&T's motion to compel arbitration.

**AFFIRMED.**