N.R. SMITH,
dissenting:
In 1925, “Congress enacted the [Federal Arbitration Act] in response to widespread • judicial hostility to arbitration.” Am. Express Co. v. Italian Colors Rest, — U.S. -, 133 S.Ct. 2304, 2308-09, 186 L.Ed.2d 417 (2013). Despite ninety years of Supreme Court precedent invalidating state laws deemed hostile to arbitration, the majority today displays this same “judicial hostility” to arbitration agreements. Our court employed the same “judicial hostility” in Laster v. AT & T Mobility LLC, 584 F.3d 849 (9th Cir.2009), rev’d sub nom. AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011), for which we were subsequently reversed.
In this case, rather than upholding the purposes of the Federal Arbitration Act (“FAA”), the majority upholds a “judicially created” state rule that prevents parties to an arbitration agreement from agreeing that their future arbitration will address individual claims arising between one employee and one employer. To conclude that the state rule (created by Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal.4th 348, 173 Cal.Rptr.3d 289, 327 P.3d 129 (2014)) does not frustrate the purposes of the FAA, the majority ignores the basic precepts enunciated in Concepcion. Because the majority should have applied Concepcion and deferred to the FAA’s “liberal federal policy favoring arbitration,” Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), rather than circumventing it, I must dissent.
I. Concepcion
Because the majority essentially ignores the Supreme Court’s direction in Concepcion (a case very similar in detail to this case), I begin by describing this important precedent in some detail.
*441 In Concepcion, a consumer contract provided for “arbitration of all disputes between the parties, but required that claims be brought in the parties’ individual capacity, and not as a plaintiff or class member in any purported class or representative proceedings.” 131 S.Ct. at 1744 (internal quotation marks omitted). Relying on the California Supreme Court’s decision in Discover Bank v. Superior Court, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005), abrogated by AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011), which established a rule that invalidated class action waivers in contracts of adhesion, a federal district court “found that the arbitration provision was unconscionable.” Concepcion, 131 S.Ct. at 1745. We affirmed, holding that the Discover Bank rule was not preempted by the FAA, because it was simply “a refinement of the unconscionability analysis applicable to contracts generally in California.” Id. Further, we rejected AT & T’s argument that “class proceedings will reduce the efficiency and expeditiousness of arbitration.” Id.
The Supreme Court reversed and concluded that a rule “[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.” Id. at 1748. The Court held that, despite § 2’s savings clause, even generally applicable contract defenses can violate the FAA if they serve as an obstacle to the objectives of the FAA. Id. The Court also identified the appropriate inquiry: If the state rule “stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,” the rule is preempted. Id. at 1753. As part of that inquiry, the Court clarified the purpose and objective of the FAA. “The overarching purpose of the FAA ... is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings.” Id. at 1748.
The Court then applied that analysis to the Discover Bank rule prohibiting the class action waivers. The Court explained that “arbitration is a matter of contract,” id. at 1745, and “[although the [Discover Bank ] rule does not require classwide arbitration, it allows any party to a consumer contract to demand it ex post,” id. at 1750. Thus, rather than holding the parties to the terms of bilateral arbitration agreed upon in their contract, the Discover Bank rule allowed any party to subject the other to class-action arbitration. Id. The Court reasoned that “class arbitration, to the extent it is manufactured by Discover Bank rather than consensual, is inconsistent with the FAA.” Id. at 1750-51.
The Court then provided three reasons why ex post, state-mandated class arbitration worked as an obstacle to the FAA’s purposes and objectives. First, “the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration — its informality — and makes the process slower, more costly, and more likely to generate procedural morass than final judgment.” Id. at 1751. The Court explained .that “[i]n bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes.” Id. (quoting Stolt-Nielsen S.A. v. AnimalFeeds Int’l Corp., 559 U.S. 662, 685, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010)). Because of the complex nature of class litigation, those benefits are lost when parties are forced to pursue class arbitration rather than the bilateral arbitration to which the parties agreed in their *442 agreement. See Concepcion, 131 S.Ct. at 1751.
Second, the Court reasoned that “class arbitration requires procedural formality.” Id. “For a class-action money judgment to bind absentees in litigation, class representatives must at all times adequately represent absent class members, and absent members must be afforded notice, an opportunity to be heard, and a right to opt out of the class.” Id. (citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811— 12, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)). The Court found it unlikely that Congress, when passing the FAA, envisioned requiring such complex procedural requirements in an arbitration context. Id. at 1751-52.
Third, “class arbitration greatly increases risks to defendants.” Id. at 1752. The Court explained:
Informal procedures do of course have a cost: The absence of multilayered review makes it more likely that errors will go uncorrected. Defendants are willing to accept the costs of these errors in arbitration, since their impact is limited to the size of individual disputes, and presumably outweighed by savings from avoiding the courts. But when damages allegedly owed to tens of thousands of potential claimants are aggregated and decided at once, the risk of an error will often • become unacceptable. Faced with even a small chance of a devastating loss, defendants will be pressured into settling questionable claims.... Arbitration is poorly suited to the higher stakes of class litigation .... We find it hard to believe that defendants would bet the company with no effective means of review, and even harder to believe that Congress would have intended to allow state courts to force such a decision.

Id.

After presenting these three reasons why ex post, state-mandated class arbitration worked as an obstacle to the objectives of the FAA, the Court addressed the argument that class arbitration was “necessary to prosecute small-dollar claims that might otherwise slip through the legal system.” Id. at 1753. The Court rejected the argument, reasoning that “States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons.” Id. Thus, the Court concluded that “[bjecause ‘it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,’ California’s Discover Bank rule is preempted by the FAA.” Id. (quoting Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).
II. FAA’s preemption of the Iskanian rule
The majority cannot distinguish the present case from the principles outlined in Concepcion. Concepcion dealt with a state rule that prohibited class-action waivers in arbitration agreements. The present case involves a state rule that prohibits representative action waivers in arbitration agreements.
The Discover Bank rule and the Iskani-an rule are sufficiently analogous to guide our decision.[1] Class actions and PAGA *443 actions both allow an individual (who can normally only raise his or her own individual claims) to bring an action on behalf of other people or entities. See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011) (reasoning that “[t]he class action is ‘an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.’ ” (quoting Califano v. Yamasaki 442 U.S. 682, 700-01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979))); Arias v. Superior Court, 46 Cal.4th 969, 986, 95 Cal.Rptr.3d 588, 209 P.3d 923 (2009) (explaining that an aggrieved employee suing under PAGA “does so as the proxy or agent of the state’s labor law enforcement agencies” and a judgment binds the state law enforcement agencies and nonparty aggrieved employees). Likewise, waivers of class actions and representative actions both seek to prevent the parties from raising claims on behalf of others by limiting arbitration to only those claims arising between the parties to the agreement.
Because the class action and representative action waivers fulfill the same pur-póse, it should be no surprise that they are often (if not always) grouped together and use similar language.[2] The common inclusion of both class action and representative waivers in arbitration agreements indicates that one waiver, without the other, would not be sufficient to create the type of arbitration desired by the parties. For example, an arbitration agreement that includes a class waiver without including a representative waiver would not effectively limit the arbitration to only individual claims arising between the parties to the agreement. Thus, both the Discover Bank rule and Iskanian rule (by invalidating these waivers) act to prevent contracting parties from crafting arbitration agreements in a way that limits the arbitration to claims arising solely between the contracting parties.[3]
The majority emphasizes the differences between class actions and PAGA claims. But differences between the two types of actions, no matter how plentiful the majority would want to characterize them, do not change the fact that a rule prohibiting *444 the waiver of either type of action in an arbitration agreement interferes with the parties’ freedom to limit their arbitration only to those claims arising between the contracting parties. The majority recognizes that one of the key problems with the Discover Bank rule in Concepcion was that “it could not be applied to arbitration agreements without interfering with parties’ freedom to select informal procedures” for their own arbitrations. Maj. Op. at 435 (emphasis added). In an attempt to apply that principle to the Iskani-an rule, the majority reasons that “the Iskanian rule does not conflict with the FAA, because it leaves parties free to adopt the kinds of informal procedures normally available in arbitration.” Maj. Op. at 439 (emphasis added). However, the majority’s reasoning overlooks the simple fact that, by preventing parties from limiting arbitration only to individual claims arising between the two contracting parties, the Iskanian rule interferes with the parties’ freedom to craft arbitration in a way that preserves the informal procedures and simplicity of arbitration (just as did the Discover Bank rule). By requiring the availability of representative PAGA claims in arbitration (i.e., claims not specific to the contracting parties), the Iskanian rule interferes with the fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA. See Concepcion, 131 S.Ct. at 1748.
Because the effect of the waivers before challenged in Concepcion and now challenged in this case are similar, the analytic framework and reasoning in Concepcion is directly applicable. Just like the Discover Bank rule in Concepcion, the Iskanian rule does not require the parties to arbitrate representative PAGA claims. However, by invalidating representative waivers in an arbitration agreement (as applied to PAGA claims), the rule allows any party to an employment contract to demand arbitration of a representative PAGA claim ex post, despite the fact that the parties agreed to forgo such a demand in the agreement, where the parties have already agreed to waive all other forums. See id. at 1750. As explained below, by (a) preventing parties from crafting arbitration agreements to limit the arbitration only to individual claims and (b) allowing ex post demand for the arbitration of representative PAGA actions, the Iskanian rule forces the parties to lose the benefits of arbitration and frustrates the purposes of the FAA. The Iskanian rule burdens arbitration in the same three ways identified in Concepcion: it makes the process slower, more costly, and more likely to generate procedural morass; it requires more formal and complex procedure; and it exposes the defendants to substantial unanticipated risk. See id. at 1751-52.

A. The Iskanian rule makes arbitration slower, more costly, and more likely to generate procedural morass.

First, the switch from the arbitration of only individual claims to the arbitration of representative PAGA claims on behalf of the^ State and all other aggrieved employees “sacrifices the principal advantage of arbitration — its informality — and makes the process slower, more costly, and more likely to generate procedural morass.” Concepcion, 131 S.Ct. at 1751.[4] When an *445 aggrieved employee raises a representative PAGA claim, he must first show that his employer violated the California Labor Code. If the PAGA claimant is successful in proving that his or her employer violated the Labor Code, civil penalties are assessed against the employer in the amount of “one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.” Cal. Labor Code § 2699(f)(2). Thus, rather than merely focusing on the individual employee, the hours he worked, and the damages due to him, an arbitrator overseeing a representative PAGA claim would have to make specific factual determinations regarding (1) the number of other employees affected by the labor code violations, and (2) the number of pay periods that each of the affected employees worked. Because of the high stakes involved in these determinations, both of these issues would likely be fiercely contested by parties. In arbitrations involving large companies, the arbitrator would be required to make individual factual determinations regarding the employment status for hundreds or thousands of employees, none of whom are party to such arbitration. Further, the employee who brought the representative PAGA claim would not initially have access to the information needed to prove the number of affected employees or the number of pay periods they worked. Therefore, some kind of discovery would need to take place, requiring the employer to divulge the necessary documents (potentially a tremendous number of payroll and employment forms) to the PAGA claimant. This would not be a minor undertaking. All of these additional tasks and procedures necessarily makes the process substantially slower, substantially more costly, and more likely to generate procedural morass than non-representative, individual arbitration.
Despite these additional procedural hurdles present in a PAGA claim, the majority denies that representative PAGA claims would make the process slower, substantially more costly, and more likely to generate procedural morass. Instead, the majority reasons that any potential complexity of PAGA claims does not render such claims incompatible with arbitration. The majority holds that “arbitration is well suited to resolving complex disputes, provided that the parties are free to decide how the arbitration will be conducted.” Maj. Op. at 438. However, that rationale ignores the problem the Iskanian rule creates; the parties had already decided how their arbitration would be conducted (individually, in a non-representative capacity). The Iskanian rule instead allows the employee, ex post, to demand arbitration of representative claims.[5] Although two par *446 ties certainly could agree to arbitrate representative PAGA claims when they construct and sign the arbitration agreement, requiring the parties to resolve representative actions (after a contrary agreement between the parties has been struck) renders the arbitration much more complex, costly, and time consuming than what the parties had agreed to do. “Arbitration is a matter of contract,” and “[t]he overarching purpose of the FAA ... is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings.” Concepcion, 131 S.Ct. at 1745, 1748. When the parties have agreed to a specific, streamlined method of arbitration (such as the arbitration of individual claims only), and a relevant, state rule forces the parties to forego their chosen method of dispute resolution in favor of a procedure that is more costly and time consuming, the state rule frustrates the purposes of the FAA. As the Concepcion Court explained in the class arbitration context, “The conclusion follows that class arbitration, to the extent it is manufactured by Discover Bank rather than consensual, is inconsistent with the FAA.” Id. at 1750-51. Likewise, it follows that representative arbitration, to the extent it is manufactured by Iskanian rather than consensual, is inconsistent with the FAA.
The majority further reasons that, even if representative PAGA actions will make the arbitration process slower or more costly, the same could be said of any complex or fact-intensive claim. The majority compares representative PAGA actions to antitrust claims as an example of another type of claim that has the potential to make arbitration slower and more costly. This comparison is incorrect. Instead, the principle enumerated in Concepcion requires us to compare a representative PAGA claim (what the Iskanian rule would require) to individual, bilateral arbitration (what the parties had agreed to do in their arbitration agreement). Had the majority conducted the correct comparison, it would be forced to conclude that the arbitration of representative PAGA claims is certainly more likely to make the process slower, substantially more costly, and more likely to generate procedural morass than non-representative, individual arbitration.

B. The Iskanian rule requires more formal and complex procedure.

Second, representative PAGA actions are procedurally more complex than the arbitration of solely individual claims. Specifically, the discovery required in a representative PAGA claim is vastly more complex than would be required in an individual arbitration. In an individual arbitration, the employee already has access to all of his own employment records (or can easily obtain them from his employer). He knows how long he has been working for the employer and can easily determine how many pay periods he has been employed. Likewise, he knows whether he has been affected by the Labor Code violations he is alleging and can provide individual evidence to support his claims. However, in a representative PAGA claim, the individual employee does not have access to any of this information on behalf of all the other potentially aggrieved employees. Therefore, the employee must be able to obtain the information from the employer or the other employees. The discovery necessary to obtain these documents from the employer would be signifi *447 cant and substantially more complex than discovery regarding only the employee’s individual claims. The majority’s proposed solution to this complexity, the use of hypothetical informal procedures instead of more formal ones, misses the mark. The procedural complexity present in representative PAGA claims is not attributable to the use of formal versus informal procedures. Instead, such complexity is a function of the sheer number of tasks and procedural hurdles present in bringing a representative PAGA claim.
The majority completely dismisses the procedural complexity that a representative PAGA claim entails. As the majority suggests, the arbitration of representative PAGA claims may not be. as procedurally complex as class arbitrations. See Concepcion, 131 S.Ct. at 1751-52. However, (for the second time), the majority makes the wrong comparison. Instead of comparing a representative PAGA claim to individual, bilateral arbitration (i.e., what the parties had agreed to versus what the Iskanian rule would require, as the principle enumerated in Concepcion requires), the majority compares a representative PAGA claims to class arbitration and concludes that, because the two procedures are different, a representative PAGA action is not inconsistent with arbitration. Had the majority conducted the correct comparison, the majority would be forced to conclude that the arbitration of representative PAGA claims is certainly more procedurally complex than bilateral arbitration.
The majority holds that any potential procedural complexity will depend on the arbitration procedures the parties select and that the parties may streamline complex PAGA claims by agreeing to informal procedures. However, this type of reasoning was also considered and rejected in Concepcion, where the plaintiff contended that because the parties could agree to informal procedures, class procedures were not necessarily incompatible with arbitration. 131 S.Ct. at 1752-53. Again, the majority fails to recognize that, although the parties could choose to employ procedures to address the complexity inherent in representative PAGA actions, they cannot be required by a state to do so. As the Court in Concepcion reasoned:
The Concepcions contend that because parties may and sometimes do agree to aggregation, class procedures are not necessarily incompatible with arbitration. But the same could be said about procedures that the Concepcions admit States may not superimpose on arbitration: Parties could agree to arbitrate pursuant to the Federal Rules of Civil Procedure, or pursuant to a discovery process rivaling that in litigation. Arbitration is a matter of contract, and the FAA requires courts to honor parties’ expectations. But what the parties in the aforementioned examples would have agreed to is not arbitration as envisioned by the FAA, lacks its benefits, and therefore may not be required by state law.
Id. (citation omitted). Therefore, although parties may choose to employ complex discovery procedures, as would be required by a representative PAGA claim, state law cannot demand that they do so. Here, Sakkab and Luxottica chose to pursue individual, non-representative arbitration. Therefore, the Iskanian rule frustrates the purposes of the FAA by requiring them to undertake the procedural complexity of representative PAGA claims.

C. The Iskanian rule exposes the defendants to substantial unanticipated risk.

Third, the arbitration of representative PAGA claims greatly increases the risk to employers. See id. at 1752. Rather than *448 awarding damages for Labor Code violations for just one employee, representative PAGA claims award damages for all affected employees. Cal. Labor Code § 2699(f)(2). ' A representative PAGA claim could therefore increase the damages awarded in arbitration by a multiplier of a hundred or thousand times (depending on the size of the company). Thus, the concerns expressed in Concepcion are just as real in the present case:
The absence of multilayered review makes it more likely that errors will go uncorrected. Defendants are willing to accept the costs of these errors in arbitration, since their impact is limited to the size of individual disputes, and presumably outweighed by savings from avoiding the courts. But when damages allegedly owed to [hundreds or thousands] of potential claimants are aggregated and decided at once, the risk of an error will often become unacceptable. Faced with even a small chance of a devastating loss, defendants will be pressured into settling questionable claims.... We find it hard to believe that defendants would bet the company with no effective means of review, and even harder to believe that Congress would have intended to allow state courts to force such a decision.
Concepcion, 131 S.Ct. at 1752.
The majority admits that representative PAGA actions may involve high stakes, but then concludes that high stakes, alone, cannot lead to invalidation of the Iskanian rule and again compares PAGA actions to antitrust claims in illustrating its argument. Once again, (for the third time), the majority completely misses the point of Concepcion and invokes an incorrect comparison. Parties to an arbitration could agree to arbitrate high stakes issues. However, a state court cannot “force such a decision.” Id. Comparing such high stakes PAGA actions to antitrust claims is not relevant. Again, the majority should have compared high stakes PAGA actions against the individual, bilateral arbitration that the parties actually agreed to undertake. When Sakkab and Luxottica entered into their arbitration agreement, they chose to limit the risk to which they were subjecting themselves to damages arising out of individual claims between the two parties. That is all. The Iskani-an rule invalidates that decision and allows Sakkab to demand ex post arbitration of claims outside of that framework. Concepcion declared that this increased risk, to which the parties did not agree, frustrated the purposes of the FAA. When combined with the increased cost, time, and procedural complexity inherent in the arbitration of representative PAGA claims (when compared to solely individual arbitration), the increased risk to a defendant works as yet another way that the benefits of arbitration are lost through application of the Iskanian rule.

D. The Iskanian rule cannot be justified on state policy grounds.

The majority holds that its decision “is bolstered by the PAGA’s central role in enforcing.California’s labor laws” and that “[b]oth the PAGA statute and the Iskani-an rule reflect California’s judgment about how best to enforce its labor laws.” Maj. Op. at 439. -However, under Concepcion, “States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons.” 131 S.Ct. at 1753. As is evidenced by our discussion of the effective vindication exception to the FAA in Ferguson v. Corinthian Colls., Inc., when it comes to arbitration agreements, “ ‘[w]e have no earthly interest (quite the contrary) in vindicating’ *449 a state law.”[6] 733 F.3d 928, 936 (9th Cir.2013) (quoting Italian Colors Rest., 133 S.Ct. at 2320 (Kagan, J., dissenting)). Thus, if a state law violates or frustrates the FAA, -the state law must give way, even if such a decision prevents the state’s interest from being vindicated. Ferguson, 733 F.3d at 936-37. By relying so heavily on state policy grounds to support its decision, the majority strays awfully close to invocation of the effective vindication doctrine, which the majority admits does not apply to the present case. Therefore, because the Iskanian rule serves as an obstacle to the objectives of the FAA, the desirability and importance of the rule to the State’s policies and purposes cannot save it.[7]
Although the State’s interest in an employee’s ability to bring PAGA claims is ultimately irrelevant to the Concepcion analysis, it is important to note that preemption of the Iskanian rule does not preempt PAGA itself. In fact, PAGA could continue to play a meaningful role in California’s labor law enforcement scheme without the Iskanian rule. First, any employee not subject to an arbitration agreement waiving such actions is free to bring a PAGA claim. In the present case, Lux-ottica gave Sakkab the option to opt out of the arbitration agreement if he simply returned the opt-out form to Luxottica within a specified period of time. We have previously reasoned that an opt out provision prevents an. arbitration agreement from being a contract of adhesion, and supports the enforceability of the agreements. See Circuit City Stores, Inc. v. Ahmed, 283 F.3d 1198, 1199-1200 (9th Cir.2002). Thus, employers are incentivized to include opt out provisions in their arbitration agreements. Any employees who opt out of arbitration, or whose employers do not utilize arbitration, will be free to bring PAGA claims. Second, PAGA requires that potential claimants provide notice to the State before pursuing a PAGA action. Cal. Labor Code § 2699.3. As no one has asserted that the State of California is prevented from raising the labor violations on its own, the notice provision of PAGA and the implementation of statutory damages for Labor Code violations can continue to provide a meaningful benefit to the State of California. Finally, inasmuch as a PAGA claim can be limited to damages stemming from a single employee’s employment, PAGA continues to provide an opportunity for individuals to collect damages on behalf of the State, even in arbitration. Luxottica has expressly argued that an “individual” PAGA claim could be raised under its arbitration agreement with Sakkab. Although the existence of “individual” PAGA claims is disputed, see Reyes v. Macy’s, Inc., 202 Cal.App.4th 1119, 1123, 135 Cal.Rptr.3d 832 (2011) (holding that a PAGA claimant may not bring an individual PAGA claim), the Iska-nian court expressly chose not to decide the issue. See Iskanian, LLC, 59 Cal.4th at 384, 173 Cal.Rptr.3d 289, 327 P.3d 129. Instead, the court reasoned that, even if such claims are available, individual PAGA claims would not “result in the penalties contemplated under the PAGA to' punish and deter employer practices that violate *450 the rights of numerous employees under the Labor Code.” Id. But, once again, the state’s purpose is irrelevant. A state may not insulate causes of action from arbitration by declaring that the purposes of the statute can only be satisfied via class, representative, or collective action. If the rule conflicts with the objectives of the FAA, the state rule must give way. Concepcion, 131 S.Ct. at 1753.
Because the Iskanian rule stands as an obstacle to the purposes and objectives of the FAA, there is no question — the rule must be preempted. Preemption would be consistent both with the Supreme Court’s controlling decision in Concepcion and the FAA’s “liberal federal policy favoring arbitration.” Moses H. Cone Mem’l Hosp., 460 U.S. at 24, 103 S.Ct. 927. Numerous state and federal courts have attempted to find creative ways to get around the FAA. We did the same in Laster, and were subsequently reversed in Concepcion. The majority now walks that same path. Accordingly, I would affirm.

. The majority spends a significant portion of its decision discussing whether Iskanian's rule is a “generally applicable contract defense.” See Concepcion, 131 S.Ct. at 1746 (quoting Doctor’s Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). However, the parties do not address the issue of whether the Iska-nian rule is a generally applicable contract defense. Therefore, I do not address the issue (although (a) I have serious doubts that the rule established by Iskanian falls into the same category as the common law contract defenses of duress or fraud, and (b) the Su *443 preme Court did not determine in Concepcion whether the alleged unconsciojiability of failing to apply the Discover Bank rule was a generally applicable contract defense). Further, declaring that the Iskanian rule is a "generally applicable contract defense” does not help the majority. Under Concepcion, even generally applicable contract defenses may be preempted if they “stand as an obstacle to the accomplishment of the FAA's objectives.” Id. at 1748. The Iskanian rule stands as such an obstacle to "[t]he overarching purpose of the FAA ... to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings.” Id.

. In Concepcion, the arbitration agreement required claims to be brought in the parties’ "individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.” Concepcion, 131 S.Ct. at 1744. Here, Sakab’s arbitration agreement requires that he will not "file (or join, participate or intervene in) a class-based lawsuit, court case or arbitration (including any collective or representative arbitration claim).” Both, waivers expressly prohibited both class and representative actions.

. The majority responds by claiming that this argument would require courts to enforce all waivers of representative claims, including individual claims in a representative capacity, in arbitration agreements. However, this argument regarding individual claims in a representative capacity again is not relevant to the facts at hand. Sakkab was given the right to pursue his individual PAGA claim in this arbitration. His employer did not object to Sakkab pursuing such an individual claim. Sakkab refused, instead pursuing the broader claim at issue here. That said, when parties contractually agree to waive any representative claims in an arbitration agreement and a state rule mandates a different decision, an analysis under Concepcion is warranted.

. For some unknown reason, the majority states that there is no support in the record for the conclusion that representative PAGA actions will make the arbitration process "slower” and "more costly.” However, the arbitration of representative PAGA actions is clearly slower and more costly than bilateral arbitration for the reasons outlined herein (for example, the review of labor code violations and number of pay periods for affected *445 employees will inherently be slower and more costly when brought in a representative capacity for multiple employees than the review of labor code violations and number of pay periods when brought in bilateral arbitration for a single employee). This conclusion is not unique and is adequately reflected in the record. Indeed, the Chamber of Commerce of the United States of America and Retail Litigation Center, Inc. filed an amicus brief in this case detailing how such representative claims lack "the simplicity, informality, and expedition that are characteristic of arbitration” and concluding that the arbitration of representative PAGA claims is as incompatible with arbitration as a class proceeding.

. The majority holds that parties could, ex ante, craft their arbitration agreements to deal with the complexity involved in the arbitration of representative PAGA claims. However, Concepcion’s analysis was not concerned with the effect of the Discover Bank rule on future arbitration agreements, but instead focused on the ex post effect of the rule on arbitration agreements containing class waivers. See Concepcion, 131 S.Ct. at 1750 (“California’s Discover Bank rule similarly in *446 terferes with arbitration. Although the rule does not require classwide arbitration, it allows any party to a consumer contract to demand it ex post."). Therefore, we also focus on Iskanian's ex post effect on Sakkab’s arbitration agreement.

. Sakkab argues that he cannot be denied a forum for his representative PAGA claims. However, Sakkab has no right to the vindication of a state law claim, as the majority correctly recognizes.

. The majority holds that "[t]he FAA was not intended to preclude states from authorizing qui tam actions to enforce state law.” Maj. Op. at 439-40. However, the majority provides no support for that declaration. Under Concepcion, if a state rule authorizing a qui tam action frustrated the purposes or objectives of the FAA, that rule would certainly be invalidated. The majority provides no authority to support the contention that slate law can preempt federal law if the state law involves qui tam actions.